IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.: 3:18CR387 |
| Plaintiff, | JUDGE JAMES G. CARR |
| v. | |
| RICHARD ROWOLD, ET AL, | <u>RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNTY ONE OF THE INDICTMENT</u> |
| Defendant. | |

## I.   INTRODUCTION

The United States respectfully submits this opposition to the Co-Defendant's, Steven J. Robison and Richard L. Rowold, Motion to Dismiss Count One of the Indictment.[1] Defs.' Mot. to Dismiss, at 1, Mar. 4, 2019; Def. Rowold's Mot. to Join Co-Def.'s Mot. to Dismiss, at 1-2, Mar. 6, 2019.

Defendants' motion contends that Count One of the indictment does not allege sufficient facts to establish a violation of 18 U.S.C. § 922(a)(6). Defs.' Mot. to Dismiss, at 1. More specifically, the defendants argue that the facts alleged do not establish that the defendants acquired or attempted to acquire a firearm. *Id.* at 4. The term "firearm" is defined in 18 USC 921(a)(3).

Defendants were charged with a violation of 18 U.S.C. 922(a)(6) for knowingly making a false and fictitious statement in connection with the acquisition of 50 Anderson Manufacturing

---

[1] Defendant Steven J. Robison submitted a Motion to Dismiss Count One on March 4, 2019. Defendant Richard Rowold submitted a Motion to Adopt Co-Defendant's Motion to Dismiss on March 6, 2019.

AR-15 lower receivers.[2] Defendants' argument hinges on the assertion that the AR-15 lower receiver is not a firearm, therefore, the defendants cannot be guilty of attempting to purchase or acquire an item that is not a firearm. The government disagrees with both contentions.

## II. FACTS

The defendants have been indicted on violations of federal law relating to the purchase of firearms from Jaqua's Fine Guns, Inc., a Federal firearms licensee, in February 2018. *See* Indictment Count 1.

On February 12, 2018, Defendant Steven J. Robison completed an ATF Form 4473 for 50 Anderson receivers, model AM-15, serial numbers 18012600-18012649 from Jaqua's Fine Guns, Inc., located in Findlay Ohio. Defs.' Ex. A-1; Defs.' Ex. C-2. At the time of purchase Defendant Robison completed an ATF Form 4473, Firearms Transaction Record, for the 50 Anderson receivers. An ATF Form 4473 is required to be completed when an individual purchases a firearm from a Federal Firearm Licensee (FFL). The purpose of the ATF Form 4473 is to determine whether a FFL may "lawfully sell or deliver a firearm to the person identified in Section A." Government's Ex. 1, at 1. When completing the Form 4473, Defendant Robison answered "yes" to question 11.a. on the Form 4473 which states:

> Are you the actual transferee/buyer of the firearm(s) listed on this form? **Warning: You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you.** *Exception: **If you are picking up a repaired firearm(s)** for another person, you are **not** required to answer 11.a. and may proceed to question 11.b. (See Instructions for Question 11.a.).* (Emphasis in the original). Government's Ex. 1, at 1.

The instructions for Question 11.a. on the ATF Form 4473 provides:

---

[2] The defendants point out that the receivers are sometimes referred to as AM-15 receivers and sometimes as AR-15 receivers. The receivers are AR-15 type receivers in that they are the lower receiver for an AR-15 type of rifle. AM-15 is the model name of the receiver that Anderson Manufacturing has assigned to their specific receiver. Other manufacturers may assign different model names for their AR-15 type of receiver.

2

> **Question 11.a. Actual Transferee/Buyer**: For purposes of this form, a person is the actual transferee/buyer if he/she is purchasing the firearm for him/herself or otherwise acquiring the firearm for him/herself (*e.g., redeeming the firearm from pawn, retrieving it from consignment, firearm raffle winner*). A person is also the actual transferee/buyer if he/she is legitimately purchasing the firearm as a bona fide gift for a third party. A gift is not bona fide if another person offered or gave the person completing this form money, service(s), or item(s) of value to acquire the firearm for him/her, or if the other person is prohibited by law from receiving or possessing the firearm.
>
> **Actual TRANSFEREE/buyer examples**: Mr. Smith asks Mr. Jones to purchase a firearm for Mr. Smith (*who may or may not be prohibited*). Mr. Smith gives Mr. Jones the money for the firearm. Mr. Jones is **NOT THE ACTUAL TRANSFEREE/BUYER** of the firearm and must answer "**NO**" to question 11.a. The licensee may not transfer the firearm to Mr. Jones. However, if Mr. Brown buys the firearm with his own money to give to Mr. Black as a gift (*with no service or tangible thing of value provided by Mr. Black*), Mr. Brown is the actual transferee/buyer of the firearm and should answer "**YES**" to question 11.a. However, the transferor/seller may not transfer a firearm to any person he/she knows or has reasonable cause to believe is prohibited under 18 U.S.C. 922(g), (n) or (x). **EXCEPTION:** If a person is picking up a repaired firearm(s) for another person, he/she is not required to answer 11.a. and may proceed to question 11.b. (Emphasis in original). Government's Ex. 1, at 4.

The ATF Form 4473 requires that the transferee/buyer certify that the answers provided in Section A of the ATF Form 4473, to include Question 11.a., are "true, correct, and complete" and the transferee/buyer understands that "making any false oral or written statement . . . is a crime punishable as a felony under Federal law . . . ." Government's Ex. 1, at 3. The ATF Form 4473 requires the identification of the firearm(s) to be purchased in Section D, to include the serial number. *Id*. The instructions for Section D of the ATF Form 4473 also provides, in relevant part, that "**Types of firearms include but are not limited to:** . . . receiver, frame . . . ." *Id.* at 6.

After Defendant Robison completed the ATF Form 4473 on February 12, 2018, the FFL conducted the required National Instant Criminal Background Check System (NICS) query with

the FBI.³ Defs.' Ex. A-1. Defendant Robison received the Anderson AR-15 type receivers on February 16, 2018, after the required waiting period.⁴ Defs.' Ex. A-1.

After the transfer, Special Agent Jimmie Pharr received information from Anderson Manufacturing, a FFL in Kentucky, regarding an invoice for a pack of 50 AM-15 stripped lower receivers. Defs.' Ex. C-1; Defs.' Ex. C-2. The invoice indicated a billing address to Defendant Richard Rowold and a shipping address to Defendant Robison for serial numbers 18012600 through 18012649. Defs.'s Ex. C-2. Anderson Manufacturing shipped these firearms to Steven Robison at Jaqua's Fine Guns, Inc. in Findlay, Ohio. Defs.' Ex. C-1.

## III. LEGAL BACKGROUND

### A. SUFFICIENCY OF THE INDICTMENT

An indictment must "first contain[ ] the elements of the offense charged and fairly inform[ ] a defendant of the charge against which he must defend, and, second, enable[ ] him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). The Sixth Circuit has stated that, to be legally sufficient, "the indictment must assert facts which in law constitute an offense; and which, if proved, would establish prima facie the defendant's commission of that crime." *United States v. Maney*, 226 F. 3d 660, 663 (6th Cir. 2000) (citing *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 177 (6th Cir. 1992)).

---

³ Title 18 U.S.C. § 922(t) prohibits, with limited exceptions, Federally licensed firearms importers, manufacturers, and dealers from transferring a firearm to any other person who is not licensed under the GCA unless before the completion of the transfer, the licensee contacts the national instant criminal background check system (NICS) and the system provides a unique identification number, or 3 business days have elapsed since the licensee contacted the national instant criminal background check system without a response from the system. FFLs may initiate a NICS background check "only in connection with a proposed firearm transfer as required by the Brady Act." *See* 28 C.F.R. § 25,6(a).

⁴ On February 19, 2019, after the transfer of the firearm, FBI NICS contacted Jaque's Fine Guns. Inc to inform the FFL that Defendant Robison was prohibited from possessing firearms. Defs.' Ex. A-1.

## B. THE FIREARM FRAME OR RECEIVER IS A FIREARM UNDER THE GUN CONTROL ACT OF 1968

The Gun Control Act of 1968 (GCA), Title 18, United States Code, Chapter 44, as amended, defines a firearm as:

> **(3)** The term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) **the frame or receiver** of any such weapon…. 18 U.S.C.A. § 921 (West)(emphasis added).

"Frame or receiver" is not defined in the statute. However, the regulations at 27 C.F.R. Chapter II Part 478, Commerce in Firearms and Ammunition, contains a definition of the term "firearm frame or receiver." As defined in 27 C.F.R. § 478.11[5] a firearm frame or receiver is "[t]hat part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel." Federally licensed firearms manufacturers and importers must identify each firearm imported or manufactured by means of a serial number engraved or cast on the frame or receiver of the weapon, as required by 18 U.S.C. § 923(i) and 27 C.F.R. § 478.92(a)(1). As a part of the identification requirement, a firearm frame or receiver that is not a part of a complete weapon must be identified by a licensed importer or manufacturer at the time it is sold, shipped, or otherwise disposed of. *See* 27 C.F.R. § 478.92(a)(2).

## C. THE REGULATION OF THE INTERSTATE TRANSFER OF A FIREARM

The GCA generally makes it unlawful for any person, except a licensee, to engage in the business of dealing firearms, or in the course of that business to receive any firearm in interstate

---

[5] In the Motion to Dismiss, defendants cite to 27 CFR § 479.11 not 27 C.F.R. 478.11. Title 27 of the Code of Federal Regulations Part 479 promulgates the procedural and substantive requirements under the provisions of the National Firearms Act, 26 U.S.C, Chapter 53. *See* 27 C.F.R. § 479.1. The Defendants are charged with a violation of the Gun Control Act of 1968, 18 U.S.C. § 922(a)(6). Title 27 of the Code of Federal Regulations Part 478 promulgates the regulations related to commerce in firearms and ammunition under 18 U.S.C., Chapter 44. *See* 27 C.F.R. § 478.1. The regulatory definition of a Firearm frame or receiver is identical under both parts.

or foreign commerce. 18 U.S.C. § 922(a)(1)(A). Additionally, 18 U.S.C. § 922(a)(3) generally prohibits a person from transporting into or receiving in their State of residence any firearm purchased outside that State. Prior to the transfer of a firearm by a licensee to a non-licensee, a NICS background check must be conducted on the transferee. *See* 18 U.S.C. § 922(t). As a mechanism to facilitate the transfer of a firearm and ensure the proper background check is completed on the transferee of a firearm, Federal regulations require a licensee obtain an ATF Form 4473 prior to making an over-the-counter transfer of a firearm. *See* 27 C.F.R. §§ 478.102 and 478.124.

> As it pertains to the violation in this case, the GCA makes it unlawful:
>
> for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter;

18 U.S.C. § 922(a)(6). The elements of § 922(a)(6) require that "(1) the defendant knowingly made (2) a false or fictitious oral or written statement that was (3) material to the lawfulness of the sale or disposition of a firearm, and was (4) intended to deceive or likely to deceive a firearms dealer." *United States v. Morales*, 687 F.3d 697, 700 (6th Cir. 2012) (quoting *United States v. Harvey*, 653 F.3d 388, 393 (6th Cir. 2011)).

IV. **ARGUMENT**

    A. **SUFFICIENCY OF THE INDICTMENT**

Count 1 of the indictment presents that Defendants Richard L. Rowold and Steven J. Robison knowingly made false or fictitious statements intended to deceive a firearms dealer by answering "yes" to the question on the ATF Form 4473 which asks whether Defendant Robison

6

was the actual purchaser of the firearms, when, in fact, Defendant Rowold was the actual purchaser of the firearms. Indictment Count 1. The indictment states Count 1 is filed "in connection with the acquisition of firearms, to wit: 50 Anderson AM-15 lower receivers, purchased online and delivered to Jacqua's Fine Guns, a licensed dealer of firearms . . . ." Indictment Count 1. This indictment includes all the necessary elements and alleges the factual basis for the indictment, that is: 1) Defendants knowingly made; 2) a false and fictitious written statement on the ATF Form 4473; 3) the false statement was material to the lawfulness of the sale as "no piece of information is more important under federal firearms law than the identity of a gun's purchaser-the person who acquires a gun as a result of a transaction with a licensed dealer"[6]; and 4) the false statement was intended to deceive or likely to deceive the licensed dealer.

### 1. Sufficiency of indictment is not dependent upon interpretation of a substantive element of 18 U.S. C. § 922(a)(6).

The Government's interpretation of a substantive element of the offense is not a part of the test for whether an indictment is sufficient. The Government is required to present the elements of the offense and the alleged facts which meet those elements. Here, the Government identifies the AM-15 as the firearm which was purchased by the defendants in the indictment. ATF, subject to the direction of the Attorney General of the United States, is responsible for "investigating criminal and regulatory violations of Federal firearms . . . laws." 28 U.S.C § 559A. ATF has a regulatory responsibility to investigate, administer, and enforce the law related to firearms under Chapter 44, as it relates to firearms and more specifically the GCA. 28 C.F.R. § 0.130. Under these authorities, ATF determines what constitutes a firearm for purposes of the

---

[6] *Abramski v. United States*, 573 U.S. 169, 193 (2014).

GCA. The proper forum for a challenge to these determinations is under the Administrative Procedures Act.

### 2. The defense's motion to dismiss incorrectly relies on *Jimenez* for the position that the AM-15 is not a firearm.

The defense also relies on *United States v. Jimenez* in support of their argument that the receiver must house the parts referenced in the "firearm frame or receiver definition" under 27 C.F.R. § 479.11. *United States v. Jimenez*, 191 F.Supp. 3d 1038, 1041 (N.D. Cal. 2016) ("a receiver must have the housing of three elements: hammer, bolt or breechblock, and firing mechanism.") The defense's reliance on *Jimenez* for the proposition that the Court determined that a firearm frame or receiver must house all the parts in the definition in order to be a receiver is misplaced.[7] The issue presented to the Northern District of California was whether "[t]he meaning of 'receiver' was unconstitutionally vague as applied to Jimenez." *Id*. The Defendant contends that nothing in the statutes or Code of Federal Regulations gave him fair notice that possessing the lower receiver of an AR-15 rifle would count as the criminal possession of 'the receiver'." *Id.* The *Jimenez* case presents an as applied challenge regarding fair notice to that particular defendant, but is not a legal determination on the Government's interpretation of what

---

[7] Specifically, the Court stated:

> The gist of Jimenez's challenge is that the AR-15 lower receiver does not fit the CFR definition of a "receiver" that is illegal under the gun laws. Significantly, the parties agree on all the factors material to this challenge. They agree that Section 479.11 of the CFR defines a receiver as the "part of a firearm which provides housing for the hammer, bolt or breechblock and firing mechanism, and which is usually threaded at its forward portion to receive the barrel." This means a receiver must have the housing for three elements: hammer, bolt or breechblock, and firing mechanism. As the plain language of Section 479.11 shows, barrel threading is not a mandatory element. See also 1,100 Machine Gun Receivers, 73 F.Supp.2d at 1292 (same). *Jimenez* at 1041.

> …the salient question is how a person—and specifically Jimenez—contemplating the purchase of an AR-15 lower receiver **would have known about this interpretation or that ATF would treat buying one as a crime**. United States v. Jimenez, 191 F. Supp. 3d 1038, 1041 (emphasis added) (N.D. Cal. 2016).

8

constitutes a firearm frame or receiver, nor a determination on the validity of a Federal regulation. Further, the defendant in *Jimenez* was charged with both a violation of the GCA (18 U.S.C. § 922(o)) as well as a violation of the National Firearms Act (NFA)(26 U.S.C. § 5861(d). In order to prove a violation of the NFA the government must show that the defendant was aware of the characteristics of the firearm that bring it into the purview of the NFA. See *Staples v. U.S.*, 511 U.S. 600 (1994). This is not required to prove a violation of the Gun Control Act.

The defendants' motion to dismiss does not challenge the validity of the regulatory definition for vagueness as applied to this defendant, but only that the AM-15 lower receiver does not meet the definition of a firearm frame or receiver. *See generally* Defs.' Mot. to Dismiss. Even if the defense presented this argument in the defendants' motion to dismiss, the defendants received sufficient notice that what they intended to purchase were firearms.

### B. ATF HAS PROPERLY DETERMINED THE AM-15 LOWER RECIEVER IS A FIREARM AS DEFINED BY THE GUN CONTROL ACT OF 1968.

#### 1. The classification of the AR-15 lower receiver as a firearm is consistent with the statutory and regulatory scheme of the Gun Control Act of 1968.

The defendants contend that the Anderson AM-15 lower receiver does not meet the definition of receiver in the regulations because it does not house the three elements included in the definition of a receiver as defined by Federal regulation at 27 C.F.R § 479.11 (hereinafter 27 C.F.R. § 478.11) and, therefore, is not a firearm as defined in 18 U.S.C. § 921(a)(3). Defs.' Mot. to Dismiss, at 4-5. The defendants argue that a firearm frame or receiver must have the housing for the hammer, bolt or breechblock, and the firing mechanism, and must be threaded at the forward portion to accept a firearm barrel. Defs.' Mot. to Dismiss, at 4-5.

The government disagrees. The statutory and regulatory requirements of the GCA, and the legislative history of the GCA rebuts the defense's arguments that a firearm frame or receiver

needs to provide housing for all the parts listed in section 478.11.  The military, firearms industry, and ATF have consistently provided that the lower assembly of an AR-15 type firearm is the firearm frame or receiver.

The Gun Control Act of 1968 (GCA) defines "firearm" to include not only "any weapon which will…expel a projectile by the action of an explosive," but also the "frame or receiver of any such weapon."  18 U.S.C. § 921(a)(3).  The GCA, 18 U.S.C. § 923(i), requires that each licensed manufacturer or importer "identify by means of a serial number engraved or cast on the receiver or frame of the weapon . . . each firearm imported or manufactured by such importer or manufacturer."

Under the GCA-precursor, the Federal Firearms Act (FFA), all firearm parts were regulated by federal law.  In the Omnibus Crime Control and Safe Streets Act of 1968, Congress repealed the FFA, passed the GCA, and amended the National Firearms Act (NFA).  P.L. 90–351, 90th Cong., 2d Sess. (1968) 82 Stat. 197. Title IV (§§ 901–907) of P.L. 90–351 repealed the Federal Firearms Act (id. § 907) and enacted a new chapter 44 ("Firearms") of Title 18 (18 U.S.C. § 921–928).  During debate of the GCA and related bills introduced to address firearm trafficking, Congress recognized that the regulation of all firearm parts was impractical.  *See* Cong. Rec. S. 5527 (March 22, 1965) ("The present definition of this term includes 'any part or parts' of a firearm.  It has been impractical to treat each small part of a firearm as if it were a weapon.  The revised definition substitutes the words 'frame or receiver' for the words 'any part or parts.'") (Explanation of bill presented by Senator Dodd).

The term "receiver" is defined in the GCA implementing regulations, 27 C.F.R. § 478.11.  Part 478 provides that "[w]hen used in this part and in forms prescribed under this part, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof, terms shall

have the meanings ascribed in this section." Following this preamble to the meaning of terms, section 478.11 defines a "firearm frame or receiver" as "[t]hat part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel." Federally licensed firearms manufacturers and importers must identify each firearm imported or manufactured by means of a serial number engraved or cast on the frame or receiver of the weapon, as required by 18 U.S.C. § 923(i) and 27 C.F.R. § 478.92(a)(1). As a part of the identification requirement, a firearm frame or receiver that is not a part of a complete weapon must be identified by a licensed importer or manufacturer at the time it is sold, shipped, or otherwise disposed of. *See* 27 C.F.R. § 478.92(a)(2).

The defendants' arguments ignore the statutory scheme and legislative history of the Gun Control Act of 1968, and the language provided prior to "meaning of terms" in section 478.11 under the Federal regulations. The intention of Congress as indicated by the legislative intent and statutory scheme of the Gun Control Act of 1968 is to regulate the frame or receiver of a firearm. *See* Cong. Rec. S. 5527 (March 22, 1965). Congress replaced the term "part or parts" in the definition of a firearm with a single identifiable part which may be regulated under the GCA. *See id*. Congress also required that this single part be marked with a serial number. *See* 18 U.S.C. § 923(i). The preamble to the "meaning of terms" in 27 C.F.R. § 478.11 provides that "[w]hen used in this part and in forms prescribed under this part, **where not otherwise distinctly expressed or manifestly incompatible** with the intent thereof, terms shall have the meanings ascribed in this section." (Emphasis added). Thus, failure to identify a single part as a firearm frame or receiver is "manifestly incompatible" with the intent of the GCA and purpose of promulgating the GCA regulations.

The defense will provide testimony through Daniel O'Kelly that the AR-15 lower receiver does not house the bolt or breech bolt, as this part is housed in the upper receiver. Defs.' Ex. E, O'Kelly Report. Further, O'Kelly provides that the AR-15 lower receiver is not threaded at the forward portion to receiver the barrel. Defs.' Ex. E, O'Kelly Report. Mr. O'Kelly's examination of the AR-15 type lower receiver is correct, but the defense fails to also identify that the lower receiver of the AR-15 includes the hammer and the firing mechanism. In an AR-15 type firearm assembly, neither the AR-15 upper assembly nor the lower receiver include housing for the hammer, bolt or breechblock, and firing mechanism, and also includes threading for the attachment of the barrel. Therefore, the AR-15 presents the situation where no one part houses all the features listed in the receiver definition. The defense's argument results in the non-regulation of any frame or receiver of the AR-15, which was a firearm in existence prior to the GCA.

The Supreme Court has held that "if Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron, U.S.A., Inc. v. NRDC*, Inc., 467 U.S. 837, 843-844 (1984). Further, the preamble to the "meaning of terms" in section 478.11 indicates that a term shall have the meaning prescribed in this section when not manifestly incompatible with intent of the definition. To require that a receiver house all the parts listed in this section would result in an application of the "firearm frame or receiver" definition which is inconsistent with the GCA. Therefore, ATF's classification of the lower receiver as the frame or receiver of the AR-15 firearm is consistent with Congressional intent and the corresponding Federal regulations. Acceptance of the defense argument that the receiver

must contain all the parts of the regulatory definition results in the untenable position where a regulatory definition undermines the clear intent expressed by Congress in the passage of the GCA.

### 2. The AR-15 lower receiver is recognized as the regulated part by the military, ATF, and firearms industry.

The history of the AR-15 rifle assembly indicates that the lower receiver has been determined to be the firearm frame or receiver for purposes of the GCA by the military, the firearms industry, and ATF.

In the 1950s, The American Rifleman publicized a new rifle manufactured by Armalite, the AR-15. NRA Technical Staff, *The Armalite AR-15 Rifle* The American Rifleman, June 1959, at 24. The United States Air Force tested the AR-15 in 1960 and recommended after testing that the AR-15 rifle be adopted as the standard shoulder weapon. "The Armalite AR-15 Rifle", Walter J. Howe and E.H. Harrison, *The Armalite AR-15 Rifle* The American Rifleman, May 1962, 21, 23. In 1962, *The American Rifleman*, indicated the interest in the AR-15 by the Army subject to further development of the rifle. *Id*. at 23. The military adopted the M16 in 1964 and a year later a civilian version of the rifle appeared in the market.[8] Joe Poyer, *The M16/AR15 Rifle*, 2, 5 (North Cape Publications, Inc., 2007). The military MIL-SPEC Mil-W-13855 provided the standard for marking the lower receiver of the M16 rifle, the civilian markings reflected the manufacturing company's desires and ATF requirements. *Id.* at 7. The standard receiver markings for the AR-15/M16, as regulated by ATF, is on the left magazine well of the lower receiver. *Id.* at 8. The identification of the regulated part for AR-15 type firearms, pre-dates the

---

[8] The AR-15 is the civilian version of the military's M-16 rifle, and is, unless modified, a semiautomatic weapon. Joe Poyer, *The M16/AR15 Rifle*, 2, 5 (North Cape Publications, Inc., 2007). The M-16, in contrast, is a selective fire rifle that allows the operator, by rotating a selector switch, to choose semiautomatic or automatic fire. Many M-16 parts are interchangeable with those in the AR-15 and can be used to convert the AR-15 into an automatic weapon.

13

Gun Control Act of 1968 and the implementing Federal regulations. *See* NRA Technical Staff, *The Armalite AR-15 Rifle* The American Rifleman, June 1959, at 24 (profiling the new Armalite AR-15). This demonstrates that ATF's predecessor —the Alcohol and Tobacco Tax Division (ATTD)— had awareness of the existence of this design prior to drafting the current regulatory definition. Therefore, from the origin of the regulatory definition of a "firearm frame or receiver" the definition did not encompass the entire population of firearm frame or receivers. To state that the "firearm frame or receiver" definition permits that certain firearms would not have a regulated part is contradictory to legislative intent of the GCA.

Consistent with the industry determination that the AR-type lower receiver is the firearm frame and receiver and should be marked, ATF has confirmed that the lower receiver is properly regulated as a firearm frame or receiver. For example, in 1971 the Acting Director of the ATTD wrote that, regarding M-16 rifles, "we have determined that the lower receiver is in fact the receiver of a machine gun as that term is used" in the NFA. Letter to Assistant Regional Commissioner Re:M-16 Receivers Forged By Kaiser Aluminum and Chemical Company, Erie, Pa., and Subsequently Machined by Firearms Manufacturers such as Colt, H&R Arms Company, and General Motors Corporation. (Feb 23, 1971). Similarly, in replying to an inquiry in 1972, the Director informed an industry member that "this office has determined that for purposes of marking and control, the lower receiver is the receiver of the firearm." Letter to Mr. Michael D. Kokin of Sherwood Distributors Inc. (January 19, 1972), Government's Ex. 3. ATF has consistently notified manufacturers that the AR-15 is the lower receiver since 1971.

ATF and the Department of Justice also issued press releases notifying the public regarding the prosecution of individuals for firearms offenses involving AR-15 lower receivers. In these press releases, the Eastern District of California and Central District of California

identified the AR-15 lower receiver as a firearm, and explained the regulation of the firearm accordingly. *See* Press Release, U.S. Attorney's Office Eastern District of California, Sacramento Gun Manufacturer Sentenced to Prison for Manufacturing and Assisting Others to Manufacture AR-15 Rifles (Feb. 16, 2017) (https://www.atf.gov/news/pr/sacramento-gun-manufacturer-sentenced-prison-manufacturing-and-assisting-others-0) (reporting on the sentencing of an individual for unlawfully manufacturing and dealing firearms by assisting individuals in the conversion of the receiver "blank" into a AR-15 lower receiver and stating that "[O]nce the "blank" is milled into a completed lower receiver using a drill press or automated machine, it is considered a firearm and it is subject to federal regulation); Press Release, U.S. Attorney's Office Eastern District of California, Bakersfield Man Agrees to Forfeit 3,804 Lower Receiver Firearms (Feb. 9, 2016) (https://www.atf.gov/news/pr/bakersfield-man-agrees-forfeit-3804-lower-receiver-firearms) ("The lower receiver contains the trigger control group, hammer and firing mechanism, and contains mounting points for the upper receiver. Federal law classifies AR-15 lower receivers as firearms and, thus, requires that they must be manufactured with serial numbers by a licensed manufacturer, and that they can only be sold by a licensed firearms dealer. In addition, dealers must perform background check on prospective buyers before they can be sold."); Press Release, U.S. Attorney's Office Central District of California, Owner of La Habra Manufacturing Firm Charged with Illegally Manufacturing and Selling Key Component for AR-15-Type Rifles (Oct. 2, 2014) (https://www.atf.gov/news/pr/owner-la-habra-manufacturing-firm-charged-illegally-manufacturing-and-selling-key-component) ("While the sale of unfinished lower receivers is not regulated, the manufacture and sale of completed lower receivers – which are considered firearms under federal law – requires a proper license."); Press Release, U.S. Attorney's Office Eastern District of California, Sacramento Men Indicted for

Illegally Manufacturing and Selling Assault Rifles in Sacramento Area and Fresno (Feb. 27, 2014) (https://www.atf.gov/news/pr/sacramento-men-indicted-illegally-manufacturing-and-selling-assault-rifles-sacramento-area) ("The blank is eventually converted into a lower receiver using a drill press or automated machine that creates the precise shape and space necessary for the lower receiver to accept the parts that will allow the firing of a projectile. These parts (e.g., the hammer, bolt or breechblock, and firing mechanism) are the internal mechanical parts that combine with a trigger, firing pin, and other parts to form a functioning firearm. Once the blank is milled into a completed lower receiver, it is considered firearm by statute even if there is no barrel, handle, or trigger, and it is subject to federal regulation."). Additionally, ATF has a full Q&A (question and answer) page dedicated to questions regarding receiver blanks and when unfinished receivers become firearms as regulated by the GCA. ATF, *Are "80%" or "unfinished" Receivers Illegal?*, atf.gov (Mar. 13, 2019, 10:51 AM), https://www.atf.gov/firearms/qa/are-%E2%80%9C80%E2%80%9D-or-%E2%80%9Cunfinished%E2%80%9D-receivers-illegal. In one section ATF uses a picture of an unfinished AR-15 receiver and a partially finished AR-15 receiver to demonstrate when a receiver reaches the stage of manufacture to be regulated be the GCA. *Id*.

The industry has also recognized that the lower receiver of the AR-15 type firearm as the regulated part under the GCA. Joe Poyer, *The M16/AR15 Rifle*, 2, 5 (North Cape Publications, Inc., 2007) ("According to provisions of the 1968 Gun Control Law, the lower receiver is the "gun" as it contains the firing mechanism in the form of the trigger assembly. It also contains the magazine assembly, the pistol grip and the buttstock assembly including the recoil spring."); B. Gil Horman, *Building AR-15 Pistols at Home* NRA: The American Rifleman, *available at* https://www.americanrifleman.org/articles/2016/7/14/building-ar-15-pistols-at-home/ ("The AR-

15 component that is legally considered the firearm is the lower receiver (where the trigger group is housed and the serial number is located). This means the lower receiver requires an FFL transfer with all of the same paperwork and fees as a complete gun.");

The military, ATF, and the firearms industry have consistently recognized that the lower receiver is the regulated firearm frame or receiver for purposes of AR-15 type firearms like the AM-15.

### 3. The defendants had sufficient notice that the AM-15 is a firearm.

As previously discussed the defense failed to challenge the definition of frame or receiver for vagueness and incorrectly rely on *Jimenez*. Even if the motion to dismiss did raise this argument, the defendants had fair notice that the AM-15 receiver is a firearm frame or receiver. The test for vagueness is "whether the text of the statute and its implementing regulations, read together, give ordinary citizens fair notice with respect to what the statute and regulations forbid, and whether the statute and regulations read together adequately provide for principled enforcement by making clear what conduct of the defendant violates the statutory scheme." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999). In cases not involving first amendment interests the court examines whether the case is unconstitutionally vague as applied to the facts of the case. *United States v. Hill*, 167 F.3d 1055, 1063 (6th Cir. 1999).

First, the GCA statutory and regulatory scheme indicate a legislative intent that a single part of the firearm be regulated based on inclusion of a frame or receiver in the definition of a firearm in 18 U.S.C. 921(a)(3). This is further indicated by the requirement to mark a single part under section 923(i). Additionally, the preamble to the "meaning of terms" which indicates that a term may not be "manifestly incompatible" with the intent of the term provides the defendants notice that that a firearm frame or receiver does not need to house all the parts in the definition

under 478.11. If a receiver must house all the elements listed in 478.11, the result would be a regulation which undermines Congressional intent to regulate a single part of a firearm. See Cong. Rec. S. 5527 (March 22, 1965).

The facts in this case further provide notice to the defendants that the AM-15 lower receiver is a firearm under the GCA. The Government has provided notice through industry classifications, press releases, and question and answers which treat the lower receiver as a firearm frame or receiver. The industry and military also recognized that the AR-15 type lower receiver is the firearm frame or receiver based on literature and that manufacturers place required markings on the AR-15 type lower receiver. The transfer of the AM-15 in this case indicate extensive regulation of the product.[9] **Finally, Defendant Rowold completed an ATF Form 4473 which provides notice of a firearms purchase through the labels, instructions, definitions, and certifications on the Form**[10].

---

[9] Defendant Rowold purchased the firearm from Anderson Manufacturing. Defs.' Ex. C-2. The Anderson Manufacturing website states "A Federal Firearms License is required to purchase this item. Click here to submit FFL or you can Email your FFL to FFL@andersonmanufacturing.com" Government's Ex. 2. Generally, a non-regulated item would not require a license to purchase. Further, the item purchased is called a "receiver" on the website. Government's Ex. 2. The GCA restricts the interstate transfer and shipment of firearms by non-licensees in section 922(a)(1)(A) and 922(a)(3). The facts on the website indicate that this type of receiver is part of a regulatory scheme. The purchased AM-15 firearms are then sent to Jaqua's Fine Guns, Inc., a Federal firearms licensee, and Defendant Rowold is then required to complete a ATF Form 4473. Defs.' Ex. C-1. The ATF Form 4473 is named the *Firearms* Transaction Record. Government's Ex. 1.

[10] The Form 4473 includes a section which requires the individual to identify as the purchaser of the firearm in Question 11.a. Government's Ex. 1, at 1. The instructions then provide specific examples of when an individual constitutes a firearms purchaser. Government's Ex. 1, at 4-5. The instructions on the ATF Form 4473 also define a firearm to include a frame or receiver for Section D, which requires specific information regarding the firearm to include the serial number. Government's Ex. 1, at 3. The ATF Form 4473 requires that the purchaser of the firearm certify that the answers are true and correct, the individual's that any false oral or written statement with respect to the transaction is punishable as a felony, and that the purchaser understand the Notices, Instructions and Definitions on the ATF Form 4473. Government' The entire completion of the Form 4473 provided sufficient notice of the purchase of a firearm not an unregulated firearm part. Finally, as indicated in the ATF Form 4473 instructions in Question 19, a background check is completed as required prior the transfer of any firearm by the licensee under 18 U.S.C. 922(t). Government's Ex. 1, at 6.

V.  **CONCLUSION**

The defendants' assertion that the indictment is insufficient is without merit because the indictment outlines the elements of the case as applied to the facts regarding the AM-15 receiver. The false statements provided on the ATF Form 4473 are sufficient to establish that the defendants here made a false statement that Defendant Robison was the purchaser of the AM-15 instead of Defendant Rowold in an attempt to deceive the firearms dealer.

The lower receiver of an AR-15/M-16 style firearm is the receiver for purposes of the statutory and regulatory scheme of a firearm frame or receiver. The United States military, ATF, and firearms industry have proclaimed and demonstrated as much.

Accordingly, for the foregoing reasons, the government asks that the Court deny Defendants' Motion to Dismiss Count One of the Indictment.

                                          Respectfully submitted,

                                          JUSTIN E. HERDMAN
                                          United States Attorney

By:   /s/ Thomas P. Weldon
        Thomas P. Weldon (OH: 0063173)
        Assistant United States Attorney
        Four Seagate, Suite 308
        Toledo, OH 43604
        (419) 259-6376
        (419) 259-6360 (facsimile)
        Thomas.Weldon@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of March 2019 a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's system.

/s/ Thomas P. Weldon
Thomas P. Weldon
Assistant U.S. Attorney