# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 3:19CR387 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | |
| | ) | |
| RICHARD ROWOLD, ET AL., | ) | GOVERNMENT'S RESPONSE TO |
| | ) | DEFENDANT ROBISON'S SUBSTITUTE |
| Defendants. | ) | MOTION TO DISMISS COUNT ONE |
| | ) | |

The United States respectfully submits this opposition to the defendant Steven J.

Robison's Substitute Motion to Dismiss Count One of the Indictment for a violation of Title 18

of the United States Code (U.S.C.) § 922(a)(6).[1] As Defendant Robison states in Defendant's

Substitute Motion to Dismiss Count One, the parties previously filed briefings on the Motion to

Dismiss Count One in March and April 2019. (Doc #: 39, Def.'s Mot. to Dismiss Count One,

Page ID#: 119-125; Doc # 41, Govt's Response to Def.'s Mot. to Dismiss Count One, Page ID#:

155-174; Doc #: 44, Reply to Govt's Response in Opposition to Def.'s Mot. to Dismiss, Page

ID#: 198-202). This Court held a Motion Hearing on the defendant's motion to dismiss on

September 26, 2019 at which the United States government and co-defendants Steven J. Robison

and Richard Rowold called witnesses on their behalf. The Court requested a substitute briefs

from the parties after the hearing.

---

[1] This is in response to defendant Steven J. Robison's Substitute Motion to Dismiss Count One. There is a co-defendant, Richard L. Rowold, in this case. A substitute motion to dismiss has not been filed for defendant Rowold. The foregoing arguments regarding the definition of a firearm frame or receiver under 27 C.F.R. 478.11 may also be applicable to any challenge filed by defendant Rowold.

Defendant Robison's motion contends that this Court should dismiss Count One because the government has failed to allege sufficient facts to establish a violation of 18 U.S.C § 922(a)(6). More specifically, the defendant argues that the facts do not establish the defendant acquired or attempted to acquire a firearm as defined under 18 U.S.C. § 921(a)(3). The defendant argues that the indictment fails to allege that defendant Robison knowingly made false and fictitious statement in connection with the acquisition of a firearm because the AM-15 receivers purchased by defendant Robison do not constitute the frame or receiver of a firearm and therefore do not meet the definition of a firearm under section 921(a)(3). For the foregoing reasons the government disagrees.

## I. FACTS

Defendant Robison has been indicted on violations of Federal law relating to the purchase of firearms from Jaqua's Fine Guns, Inc., a Federal firearms licensee, in February 2018. *See* Indictment Count One.

On February 12, 2018, defendant Steven J. Robison completed an ATF Form 4473 for 50 Anderson receivers, model AM-15, serial numbers 18012600-18012649 from Jaqua's Fine Guns, Inc., located in Findlay Ohio. (Doc # 39-1, Def.'s Ex. A-1, Page ID#: 126). At the time of purchase defendant Robison completed an ATF Form 4473, *Firearms Transaction Record*, for the 50 Anderson receivers. *Id.* An ATF Form 4473 is required to be completed when an individual purchases a firearm from a Federal Firearm Licensee (FFL). During the completion of the ATF Form 4473 Defendant Robison answered yes to Question 11.a. on the ATF Form 4473 which asks whether the person completing the form is the actual transferee/buyer of the firearm(s) listed on the form.[2] The ATF Form 4473 requires the transferee/buyer to certify these

---

[2] Specifically the ATF Form 4473 asks:

answers are "true, correct, and complete" and that the transferee/buyer understands that "making any false oral or written statement . . . is a crime punishable as a felony under Federal law . . . ." Govt's Ex. 1, at 3.

Defendant Robison subsequently received the Anderson AR-15 type receivers on February 16, 2018 after the FFL conducted a National Instant Criminal Background Check System query with the FBI. After the transfer, ATF discovered that the billing address on the invoice for the receivers was to Richard Rowold but the shipping address was that of defendant Robison.

## II.  LEGAL BACKGROUND – GUN CONTROL ACT OF 1968

### A.    SUFFICIENCY OF THE INDICTMENT

---

Are you the actual transferee/buyer of the firearm(s) listed on this form**? Warning: You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you.** *Exception: If you are picking up a repaired firearm(s) for another person, you are not required to answer 11.a. and may proceed to question 11.b. (See Instructions for Question 11.a.).* (Emphasis in the original). Government's Ex. 1, at 1.

The instructions for Question 11.a. on the ATF Form 4473 provides:

**Question 11.a. Actual Transferee/Buyer**: For purposes of this form, a person is the actual transferee/buyer if he/she is purchasing the firearm for him/herself or otherwise acquiring the firearm for him/herself (e.g., redeeming the firearm from pawn, retrieving it from consignment, firearm raffle winner). A person is also the actual transferee/buyer if he/she is legitimately purchasing the firearm as a bona fide gift for a third party. A gift is not bona fide if another person offered or gave the person completing this form money, service(s), or item(s) of value to acquire the firearm for him/her, or if the other person is prohibited by law from receiving or possessing the firearm.

**Actual TRANSFEREE/buyer examples**: Mr. Smith asks Mr. Jones to purchase a firearm for Mr. Smith (who may or may not be prohibited). Mr. Smith gives Mr. Jones the money for the firearm. Mr. Jones is **NOT THE ACTUAL TRANSFEREE/BUYER** of the firearm and must answer "**NO**" to question 11.a. The licensee may not transfer the firearm to Mr. Jones. However, if Mr. Brown buys the firearm with his own money to give to Mr. Black as a gift (with no service or tangible thing of value provided by Mr. Black), Mr. Brown is the actual transferee/buyer of the firearm and should answer "**YES**" to question 11.a. However, the transferor/seller may not transfer a firearm to any person he/she knows or has reasonable cause to believe is prohibited under 18 U.S.C. 922(g), (n) or (x). **EXCEPTION**: If a person is picking up a repaired firearm(s) for another person, he/she is not required to answer 11.a. and may proceed to question 11.b. (Emphasis in original). Government's Ex. 1, at 4.

An indictment is sufficient if it "contain[s] the elements of the offense charged and fairly inform[s] the defendant of the charge against which he must defend, and, second enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). The Sixth Circuit has held that "the indictment must assert facts which in law constitute an offense; and which if proved, would establish prima facie the defendant's commission of that crime." *United States v. Maney*, 226 F. 3d 660, 663 (6th Cir. 2000) (citing *United States v. Superior Growers Supply*, Inc. 982 F.2d 173, 177 (6th Cir. 1992)).

## B.   VIOLATION OF 18 U.S.C. § 922(a)(6) THE GUN CONTROL ACT OF 1968

The Gun Control Act of 1968 (GCA), defines a firearm as:

> (3) The term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) **the frame or receiver of any such weapon**…. 18 U.S.C.A. § 921(West)(emphasis added).

As it pertains to the violation in this case, the GCA makes it unlawful:

> for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter;

18 U.S.C. § 922(a)(6). The elements of 922(a)(6) require that "(1) the defendant knowingly made (2) a false or fictitious oral or written statement that was (3) material to the lawfulness of the sale or disposition of a firearm, and was (4) intended to deceive or likely to deceive a firearms dealer." *United States v. Morales*, 687 F.3d 697, 700 (6th Cir. 2012) (quoting *United States v. Harvey*, 653 F.3d 388, 393 (6th Cir. 2011). The Supreme Court explained that "[s]ection 922(a)(6)…was enacted as a means of providing adequate and truthful information

about firearms transactions." *Huddleston v. United States*, 415 U.S. 814 (1974). The Second Circuit, applying *Huddleston*, held that by including attempt "Congress deemed it to be immaterial whether the firearm was ultimately acquired." *United States v. Brozyna*, 571 F.2d 742, 745 (2nd Cir. 1978); see also *United States v. Appleby*, 380 F.3d 365, 366 (8th Cir. 2004); *United States v. Gardner*, 579 F.3d 474, 477 (8th Cir. 1978); *United States v. Guerrero*, 234 F.3d 259, 262 (5th Cir. 2000).

### C.    LEGISLATIVE HISTORY OF THE GUN CONTROL ACT OF 1968

Prior to the passage of the Gun Control Act of 1968 (GCA), the Federal Firearms Act regulated all firearms parts.  The Act defined the term "firearm" to mean "any weapon, by whatever name-known which is designed to expel a projectile or projectiles by the action of an explosive and a firearm muffler or firearm silencer,  or any part or parts of such weapon." 52 Stat. 1250, June 30, 1938.  The Omnibus Crime Control and Safe Streets Act of 1968 repealed the Federal Firearms Act, replacing it with the Gun Control Act of 1968.  P.L. 90–351, 90th Cong., 2d Sess. (1968) 82 Stat. 197. Title IV (§§ 901–907) of P.L. 90–351 repealed the Federal Firearms Act (id. § 907) and enacted a new chapter 44 ("Firearms") of Title 18 (18 U.S.C. § 921–928).  During debate of the GCA and related bills introduced to address firearm trafficking, Congress recognized that the regulation of all firearm parts was impractical.  See Cong. Rec. S. 5527 (March 22, 1965).  Senator Dodd explained that "[t]he present definition of this term includes 'any part or parts' of a firearm.  It has been impractical to treat each small part of a firearm as if it were a weapon.  The revised definition substitutes the words 'frame or receiver' for the words 'any part or parts.'" *Id*.  The GCA requires that licensed importers and licensed manufacturers must identify by means of a serial number engraved or cast on the receiver of the weapon any firearm imported or manufactured by said licensee. *See* 18 U.S.C. § 923(i).

### D.     IMPLEMENTATION OF THE GUN CONTROL ACT OF 1968

The Department of Treasury implemented new regulations in 1968 which defined the term "firearm frame or receiver" in Title 26, section 178.11, of the Code of Federal Regulations (C.F.R). 33 Fed. Reg. 18555. Section 178.11, in reference to all definitions contained therein, provides that "[w]hen used in this part and in forms prescribed under this part, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof, terms shall have the meanings ascribed in this section . . ." and defines the term "firearm frame or receiver" as "[t]hat part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel." *Id*. at 18558.

The Department of Treasury implemented the final rule "in order to implement the provisions of Title I, State Firearms Control Assistance (18 U.S.C., chapter 44) of the Gun Control Act of 1968 (82 Stat. 1213) . . . ." This rule also amended the identification requirements under Part 178.92 to require that each firearm frame or receiver be marked by each licensed manufacturer or licensed importer who manufactured or imported the firearm.[3] Further, "[a]

---

[3] Each licensed manufacturer or licensed importer of any firearm manufactured or imported on or after the effective date of this part shall legibly identify each such firearm by engraving, casting, stamping (impressing), or otherwise conspicuously placing or causing to be engraved, cast, stamped (impressed) or placed on the frame or receiver thereof in a manner not susceptible of being readily obliterated, altered, or removed, an individual serial number not duplicating any serial number placed by the manufacturer or importer on any other firearm, and by engraving, casting, stamping (impressing), or otherwise conspicuously placing or causing to be engraved, cast, stamped (impressed) or placed on the frame, receiver, or barrel thereof in a manner not susceptible of being readily obliterated, altered or removed, the model, if such designation has been made; the caliber or gauge; the name (or recognized abbreviation of same) of the manufacturer and also, when applicable, of the importer; in the case of a domestically made firearm, the city and State (or recognized abbreviation thereof) wherein the licensed manufacturer maintains his place of business; and in the case of an imported firearm, the name of the country in which manufactured and the city and State (or recognized abbreviation thereof) of the importer: Provided, That the Director may authorize other means of identification of the licensed manufacturer or licensed importer upon receipt of letter application, in duplicate, from same showing that such other identification is reasonable and will not hinder the effective administration of this part: Provided, further, That in the case of a destructive device, the Director may authorize other means of identifying that weapon upon receipt of letter application, In duplicate, from the licensed manufacturer or licensed importer showing that engraving, casting, or stamping (impressing) such a weapon would be dangerous or impracticable. A firearm frame or receiver which is not a component part of a complete weapon at

firearm frame or receiver which is not a component part of a complete weapon at the time it is sold, shipped, or otherwise disposed of by a licensed manufacturer or licensed importer, shall be identified as required by this section." Proposed Rule Making, 33 Fed. Reg. 16285, 16294; 33 Fed. Reg. 18555, 18564.

The Homeland Security Act of 2002 established within the Department of Justice the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), to which the authorities, functions, personnel, and assets of the Bureau of Alcohol, Tobacco and Firearms, previously under the authority of the Department of Treasury, were transferred (with the exception of certain administration and revenue collection functions retained by the Department of Treasury). Pub. L. No. 107-296, 116 Stat. 2134 (2002). Subsequently, the Department of Justice and Department of Treasury reassigned Part 178, Commerce in Firearms and Ammunition to Title 27, Code of Federal Regulations, Part 478.

Part 478 of the Code of Federal Regulations now implements the Gun Control Act of 1968. The receiver definition under 27 C.F.R. 478.11 remains the same as the definition initially promulgated in 1968. Similarly, section 478.92 includes the same requirements for the identification of firearms contained in the 1968 regulation. Section 478.92 (a)(1) describes how licensed manufacturers and licensed importers must identify firearms, which includes, in relevant part "[b]y engraving, casting, stamping (impressing), or otherwise conspicuously placing or causing to be engraved, cast, stamped (impressed) or placed on the frame or receiver thereof an individual serial number. The serial number must be placed in a manner not susceptible of being readily obliterated, altered, or removed, and must not duplicate any serial number placed [ ] on

the time it is sold, shipped, or otherwise disposed of by a licensed manufacturer or licensed importer, shall be identified as required by this section.

any other firearm."  Section 478.92 (a)(1) also requires additional markings to be located on the frame or receiver a firearm to include: model; caliber or gauge; manufacturer's or importer's name and when applicable the name of the foreign manufacturer; if a domestically made firearm, the city and state of the manufacturer's place of business; and if imported the city and state of the importer's place of business.  Finally, section 478.92(a)(2) provides that "[a] firearm frame or receiver that is not a component part of a complete weapon at the time it is sold, shipped, or otherwise disposed of [ ] must be identified as required by this section."

## III.  ARGUMENT

Defendant Robison argues that the indictment does not establish a prima facie violation of 18 U.S.C § 922(a)(6). The Gun Control Act of 1968, 18 U.S.C. § 922(a)(6), requires the Government establish that "(1) the defendant knowingly made (2) a false or fictitious oral or written statement that was (3) material to the lawfulness of the sale or disposition of a firearm, and was (4) intended to deceive or likely to deceive a firearms dealer." *United States v. Morales*, 687 F.3d 697, 700 (6th Cir. 2012) (quoting *United States v. Harvey*, 653 F.3d 388, 393 (6th Cir. 2011).

Count One of the indictment states that defendant Steven J. Robison knowingly made false or fictitious statements intended to deceive a firearms dealer by answering "yes" to the question on the ATF Form 4473 which asks whether defendant Robison was the actual purchaser of the firearms, when, in fact, co-defendant Rowold was the actual purchaser of the firearms. Indictment Count One. The indictment states Count One is filed "in connection with the acquisition of firearms, to wit: 50 Anderson AM-15 lower receivers, purchased online and delivered to Jacqua's Fine Guns, a licensed dealer of firearms . . . ." Indictment Count One. This indictment includes all the necessary elements and alleges the factual basis for the indictment, that is: 1) Defendants knowingly made; 2) a false and fictitious written statement on the ATF

Form 4473; 3) the false statement was material to the lawfulness of the sale as "no piece of information is more important under federal firearms law than the identity of a gun's purchaser- the person who acquires a gun as a result of a transaction with a licensed dealer" *Abramski v. United States*, 573 U.S. 169, 193 (2014); and 4) the false statement was intended to deceive or likely to deceive the licensed dealer.

Defendant Robison argues that the indictment does not meet the elements of section 922(a)(6) because the facts do not allege that the AM-15 receiver is the frame or receiver based on the position of the defense's witness; previous case decisions; and guidance by the Attorney. The government disagrees.

**A. ATF HAS THE AUTHORITY TO INTERPRET REGULATIONS UNDER 27 C.F.R. 478.11 AS THE EXECUTIVE DEPARTMENT ENTRUSTED TO IMPLEMENT THE STATUTE AND TO MAINTAIN A BODY OF EXPERIENCE AND INFORMED JUDGMENT ON THE SUBJECT MATTER.**

While some Federal district courts have assessed informal decisions by ATF, such as the issuance of opinion letters, under the deferential *Chevron* two-step analysis,[4] other courts have applied the less deferential *Skidmore* standard,[5] by which a reviewing court must only give *respect* to an agency action. Here, the classification of the AR-15 as the firearm frame or receiver is not the result of notice and comment rulemaking, or a formal adjudication, and is likely not entitled to "Chevron-style deference." *See Christensen v. Harris County*, 529 U.S. 576, 587 (2000) ("Here, however, we confront an interpretation contained in an opinion letter, not one

---

[4] *See, e.g.*, *Firearms Imp./Exp. Roundtable Trade Grp. v. Jones*, 854 F. Supp. 2d 1, 15 (D.D.C. 2012) *aff'd sub nom. Firearms Imp./Exp. Roundtable Trade Grp. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 498 F. App'x 50 (D.C. Cir. 2013) (applying the *Chevron* standard to ATF's denial of its application to import firearm barrels pursuant to the GCA); *see also Modern Muzzleloading, Inc. v. Magaw*, 18 F. Supp. 2d 29, 35-36 (D.D.C. 1998) (applying the *Chevron* standard to ATF's classification of a rifle under the GCA).

[5] *See, e.g.*, *Sig Sauer, Inc. v. Jones*, 133 F. Supp. 3d 364, 369, n.7 (D.N.H. 2015), *aff'd sub nom. Sig Sauer, Inc. v. Brandon*, 826 F.3d 598 (1st Cir. 2016) (applying the *Skidmore* standard to ATF's classification of a firearm silencer under the NFA); *see also Innovator Enterprises, Inc. v. Jones*, 28 F. Supp. 3d 14 (D.D.C. 2014) (same).

arrived at after, for example, a formal adjudication or notice-and-comment rulemaking. Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference."); *Am. Fed'n of Gov't Employees v. Rumsfeld*, 262 F.3d 649, 656 (7th Cir. 2001) (citing *Christensen* for the same proposition).

Nonetheless, ATF's interpretation is entitled to some deference. *See Christensen*, 529 U.S. at 588 ("Instead, interpretations contained in formats such as opinion letters are 'entitled to respect' under our decision in *Skidmore v. Swift & Co.*, 323 U.S. 134 [(1944)].") The Supreme Court has recognized that an agency responsible for administering a statute entitles agency interpretive rules to some deference, provided the information is a permissible construction of the statute. *See Reno v. Koray*, 515 U.S. 50, 60-1 (1995) *citing Martin v. Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 157 (1991); *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984). In *United States v. Mead Corp.*, 533 U.S. 218 (2001), the U.S. Supreme Court stated:

> *Chevron* did nothing to eliminate *Skidmore's* holding that an agency's interpretation may merit some deference whatever its form, given the "specialized experience and broader investigations and information" available to the agency, and given the value of uniformity in its administrative and judicial understandings of what a national law requires.

*Id*. at 234 (internal citation omitted). "[T]he well-reasoned views of the agencies implementing a statute 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" *Id*. at 227; *see also York v. Sec'y of Treasury*, 774 F.2d 417, 419-20 (10th Cir. 1985) ("Although an interpretative rule like the one involved in this case [the classification of a firearm as a machinegun] is not granted the 'force of law' of legislative rules, it still requires deferential treatment by the court.")

After it moved to the Department of Justice, the Attorney General granted ATF authority under 18 U.S.C. § 926 to implement the GCA. *See also* 28 CFR 0.130. The implementing regulations in 27 CFR Part 478 are clearly a necessary component to effectively implementing the statute. On this topic, Federal courts have recognized ATF's authority and expertise in classifying firearms. *See M-K Specialties Model M-14 Machinegun*, 424 F. Supp. 2d 862, 871 ("Considerable weight should be given to an executive department's construction of a statutory scheme it is entrusted to administer."); *Gun South, Inc. v. Brady*, 877 F.2d 858, 864 (11th Cir. 1989) ("We must defer to the Bureau's interpretation of the Gun Control Act and its regulations absent plain error in the Bureau's interpretation."); *York*, 774 F.2d 417, 419-20 (10th Cir. 1985) ("Although an interpretative rule like the one involved in this case [the classification of a firearm as a machinegun] is not granted the 'force of law' of legislative rules, it still requires deferential treatment by the court."). Federal courts are particularly deferential towards the "'scientific determinations'" of the agency, which are "presumed to be the product of agency expertise." *Franks v. Salazar*, 816 F.Supp.2d 49, 55 (D. D.C. 2011) (quoting *Balt. Gas & Elec. Co. v. Natural Res. Def. Council, Inc.*, 462 U.S. 87, 103 (1983)).

**B.      ATF HAS PROPERLY DETERMINED THAT THE AM-15 LOWER RECEIVER IS A FIREARM AS DEFINED BY THE GUN CONTROL ACT OF 1968.**

The defendant contends that the AM-15 lower receiver[6] cannot be the frame or receiver of a firearm because the definition requires four things: a hammer, a bolt or breechblock, and a

---

[6] The defendants point out that the receivers are sometimes referred to as AM-15 receivers and sometimes as AR-15 receivers. The receivers are AR-15 type receivers in that they are the lower receiver for an AR-15 type of rifle. AM-15 is the model name of the receiver that Anderson Manufacturing has assigned to their specific receiver. Other manufacturers may assign different model names for their AR-15 type of receiver.

11

firing mechanism, as well as that the receiver be threaded at its forward position to receive the barrel.[7]

The government disagrees. The government presented Daniel Hoffman a Firearms Enforcement Officer (FEO) with the Firearms and Ammunition Technology Division (FATD) at ATF. FEO Hoffman reviewed the AM-15 lower receivers recovered in this case and classified the Anderson Manufacturing AM-15 lower receivers as a firearm frame or receiver and a firearm under the Gun Control Act of 1968 in a Firearms Technology Criminal Branch Report of Technology Classification. Govt's Ex. 2.

FEO Hoffman has been employed as a Firearms Enforcement Officer since January 2016 and is responsible for evaluation of all types of firearms to include the AR-15 weapon system. FEO Hoffman has extensive military experience in the Maryland Army National Guard as a Squad Leader and Small Arms Repairman for 13 years. Govt's Ex. 3. As a Small Arms Repairman, FEO Hoffman assembled, maintained, operated, and repaired numerous weapon systems to include the M16/M4 rifle. Govt's Ex. 3. The M16 rifle is the primary weapon of the military that is capable of fully automatic fire, but is similar in design and operation of the AR-15 type firearm. (R. 60, Hrg. Tr., Page ID 547). FATD has a national firearms collection which houses approximately 15,000 firearms to include approximately 100 different AR-15/M-16 type

---

[7] A frame or receiver is defined as "[t]hat part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which *is usually threaded at its forward portion to receive the barrel*." The defendant's expert Daniel O'Kelly argued that a frame or receiver must incorporate four components, "[y]our Honor, the fourth one, the word usually refers to the word threaded, is usually threaded. It's not usually receives the barrel." (R. 60, Hrg. Tr., Page ID 523). The plain language meaning of the word "usually" does not indicate that the receiver must not be threaded at its forward portion to receive the barrel. WEBSTER'S II NEW COLLEGE DICTIONARY (3d Ed. 2005) ("Commonly experience, observed, or used . . . . Habitual or customary."

receivers. *Id.* FEO Hoffman has had the opportunity to tour a number of manufacturers of AR-15 type firearm to include: LWRC, Smith & Wesson, Remington, and Colt. *Id.* at 548.

FEO Hoffman testified that the AR-15 type firearm houses two parts of the frame or receiver definition under 27 C.F.R. 478.11. *Id.* at 556. The defendant's motion to dismiss asserts that "Mr. Hoffman did not identify any reasoning behind designating the lower instead of the upper as the receiver for AFT [sic] purposes." Def.'s Substitute Mot. To Dismiss, at 7. Contrary to this claim, FEO Hoffman testified that ATF considered the legislative and regulatory history of the regulation of a firearm frame or receiver; the parts housed by the AM-15 lower receiver; the history of the AR-15; and the manufacturer and industry's marking and classification of the lower receiver as the firearm frame or receiver.

      **i.**      **The classification of the AR-15 lower receiver as a firearm is consistent with the statutory and regulatory scheme of the Gun Control Act of 1968.**

The statutory and regulatory requirements of the GCA, and the legislative history of the GCA rebuts the defendant's arguments that a firearm frame or receiver need to provide housing for all the parts listed in section 478.11.

The Gun Control Act of 1968 (GCA) defines "firearm" to include not only "any weapon which will…expel a projectile by the action of an explosive," but also the "frame or receiver of any such weapon." 18 U.S.C. § 921(a)(3). The GCA, 18 U.S.C. § 923(i), requires that each licensed manufacturer or importer "identify by means of a serial number engraved or cast on the receiver or frame of the weapon, *in such manner as the Attorney General shall by regulations prescribe,* each firearm imported or manufactured by such importer or manufacturer." [Emphasis added].

Under the GCA-precursor, the Federal Firearms Act (FFA), all firearm parts were regulated by federal law. In the Omnibus Crime Control and Safe Streets Act of 1968, Congress

repeated the FFA, passed the GCA, and amended the National Firearms Act (NFA). P.L. 90–351, 90th Cong., 2d Sess. (1968) 82 Stat. 197. Title IV (§§ 901–907) of P.L. 90–351 repealed the Federal Firearms Act (id. § 907) and enacted a new chapter 44 ("Firearms") of Title 18 (18 U.S.C. § 921–928). During debate of the GCA and related bills introduced to address firearm trafficking, Congress recognized that the regulation of all firearm parts was impractical. See Cong. Rec. S. 5527 (March 22, 1965) ("The present definition of this term includes 'any part or parts' of a firearm. It has been impractical to treat each small part of a firearm as if it were a weapon. The revised definition substitutes the words 'frame or receiver' for the words 'any part or parts.'") (Explanation of bill presented by Senator Dodd).

Part 478 of the Code of Federal Regulations implements the Gun Control Act of 1968. *See* 27 C.F.R. 478.1. Federal regulation implementing the GCA defines the term "receiver" at 27 C.F.R. § 478.11. Section 478.11 defines a firearm frame or receiver as "[T]hat part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel." Part 478 provides that "[w]hen used in this part and in forms prescribed under this part, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof, terms shall have the meanings ascribed in this section." Specific requirements for licensed manufacturers and importers to mark a firearm frame or receiver as required under the GCA, section 923(i), is prescribed in 27 C.F.R. § 478.92(a)(1). As a part of this requirement, a firearm frame or receiver that is not a part of a complete weapon must be identified as required under section 478.92. 27 C.F.R. § 478.92(a)(2).

The defendant's argument ignores the statutory scheme and legislative history of the Gun Control Act of 1968, and the language provided prior to "meaning of terms" in section 478.11 under the Federal regulations. The intention of Congress as indicated by the plain language of the statute, and the legislative intent and statutory scheme of the GCA is to regulate the frame or

14

receiver of a firearm.  See Cong. Rec. S. 5527 (March 22, 1965). Congress replaced the term "part or parts" in the definition of a "firearm" with a single identifiable part that may be regulated under the GCA.  *See id*. Congress also required that this single part be marked with a serial number. *See* 18 U.S.C. § 923(i). Pursuant to the preamble to the "meaning of terms" in 27 CFR 478.11, the implementing regulations cannot support the defendant's argument. Therefore, failure to identify a single part as a firearm frame or receiver is "manifestly incompatible" with the intent of the GCA and the promulgating GCA regulations.

The defendant argues that the preamble is limited to the regulation itself.  That is, the preamble's plain language "specifically relates the idea of terms having the meaning given in the regulation unless 'manifestly incompatible' to the rest of the regulation itself – 'with the intent thereof' – not the intent of some related statute." Def.'s Substitute Mot.to Dismiss, at 11. This argument ignores the purpose of the regulation under Part 478 by separating the regulation from the very statute it implements. The "Scope of the regulations" under Part 478.1 states "[t]he regulations contained in this part relate to commerce in firearms and ammunition and are promulgated to implement Title I, State Firearms Control Assistance (18 U.S.C. Chapter 44), of the Gun Control Act of 1968 (82 Stat. 1213) . . . ." 27 C.F.R. 478.1. The GCA is not "some related statute", but the specific statute that Part 478 implements. The Department of Treasury published the regulations in question in direct response to the passage of the GCA in 1968. 33 Fed. Reg. 18555. Thus, Congress' clear intent to regulate a single part of a weapon—the firearm frame or receiver—is arguably the foundation of the statute (marking, recordkeeping, licensing, background checks, and importation)—indeed the "intent thereof" Part 478.

The defendant's position that a firearm frame or receiver must contain four parts is also manifestly incompatible with the regulatory language itself.  The regulatory language in 27 C.F.R. 478.92 requires that a manufacturer or importer licensed under the GCA identify the

frame or receiver of a firearm manufactured or imported by a serial number, and manufacturer or importer's markings. Part 478 requires that upon the receipt, sale, manufacture, or importation of a firearm, the serial number and manufacturer's markings must be recorded by Federal firearms licensees (manufacturers, importers, and dealers). *See* 27 C.F.R. 478.121-478.124. Additionally, section 478.124(a)(4) requires a licensee complete an ATF Form 4473 prior to the transfer of a firearm, identifying the firearm to be transferred by listing on the form identification markings required by section 478.92 to include: "the name of the manufacturer, the name of the importer (if any), the type, model, caliber or gauge, and the serial number of the firearm." The defendant's position that a firearm frame or receiver must include the four components listed under section 478.11 would eliminate marking, recordkeeping, and transfer requirements placed on Federal firearms licensees for a vast number of firearms in the United States, as discussed below, and severely undermine the regulatory scheme of Part 478.

FEO Hoffman testified that approximately 10 percent of firearms in the United States include the three components listed in the frame or receiver definition. (R. 60, Hrg. Tr., Page ID 557). Defense expert Daniel O'Kelly affirmed FEO Hoffman's testimony and stated there are "unbelievable number of guns on the market which have this same situation" as the AR-15, in that the receiver would not include the hammer, bolt or breechblock, and the firing mechanism. (R. 60, Hrg. Tr., Page ID 480-481). Mr. O'Kelly testified that there are a number of firearms that don't have a part that satisfies the definition to include "H&K series, the Tommy gun type firearms, Oozies (sic) . . . . For instance, semi-automatic pistols, the kind the police officers carry, Glocks, Berettas, Colts, Smith & Wessons, you name it, 90 some percent of those do not have a part which has more than one of these four elements in it and, therefore, don't qualify, according to the definition in the CFR . . . ." (R. 60, Hrg. Tr., Page ID 482). FEO Hoffman further testified that approximately 100 million firearms do not meet the complete definition of a

firearm frame or receiver in Part 478. (R. 60, Hrg. Tr., Page ID 557). The Court asked for any

further data in terms of annual production of firearms that would not fall include a part that

would not include all three components listed in of Part 478. (R. 60, Hrg. Tr., Page ID 558). The

ATF is authorized to collect information from Federal firearms licensees for purposes of

determining the number of firearms distributed into commerce or exported during the reported

calendar year, however these numbers are limited to the firearm type and do not include

information on specific weapons systems. *See* 18 U.S.C. § 923(g)(5)(A); *but see also* 18 U.S.C. §

926(a). Since 1986 the total firearms reported as manufactured in the United States is

195,504,984 by Federal firearms licensees. UNITED STATES DEPARTMENT OF JUSTICE BUREAU OF

ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES, FIREARMS COMMERCE IN THE UNITED STATES

ANNUAL STATISTICAL UPDATE (2019), *available at*

https://www.atf.gov/firearms/docs/report/2019-firearms-commerce-report/download. The

defendant's expert Mr. O'Kelly testified that "90 some percent of those do not have a part which

has more than one of these four elements", (R. 60, Hrg. Tr., Page ID 482), the government's

experts testified that 10 percent of the firearms meet the definition. (R. 60, Hrg. Tr., Page ID

557). Based on these estimates, only 19,550,498 of the estimated 195,504,984 imported or

manufactured by Federal firearms licensees would have a firearm frame or receiver which

includes all the components in 478.11.

Additionally, the National Shooting Sports Foundation (NSSF) estimated the total

number of firearms in civilian possession is 423 million, according to data reported in the

aforementioned ATF's Firearms Commerce Report in United States 2019 report, the preliminary

Annual Firearms Manufacturing and Exportation Report (AFMER) figures and industry

estimates. See Press Release, National Shooting Sports Foundation, NSSF Releases Firearms

Production Figures (December 4, 2019), available at https://www.nssf.org/nssf-releases-

firearms-production-figures.[8] Based on Mr. O'Kelly and FEO Hoffman's testimony, approximately 380.7 million firearms would not have a firearm frame or receiver which includes the components in 478.11. As it pertains to the AR-type firearm the NSSF estimates approximately 17.7 million modern sporting rifle, AR-15 type firearms, were produced in or imported into the United States between 1990-2017. See Press Release, National Shooting Sports Foundation, NSSF Releases Firearms Production Figures (December 4, 2019), available at https://www.nssf.org/nssf-releases-firearms-production-figures.

FEO Hoffman testified that the commercial sale of AR-15 style firearm began in 1964, prior to the passage of the GCA in 1968. (R. 60, Hrg. Tr., Page ID 551). The defendant's position would result in the non-regulation under Part 478 of over approximately 19 million firearm frames or receivers in the United States, including those in existence at the time of the passage of the GCA. This position is directly contrary to the GCA and the corresponding regulations implementing the GCA in Part 478. The GCA intended to make it easier and more practical to regulate a single part of a firearm as a weapon under the Act, not create massive proliferation of unregulated firearms.

The defendant also argued that the lower is not somehow more lethal than the upper as support for the position that the lower receiver should not be regulated. Def.'s Substitute Mot. to Dismiss, at 7. Lethality is irrelevant to whether a particular part is the frame or receiver of a weapon. This position ignores the statutory structure created by the GCA in 1968 that a single part be regulated.  Congress specifically added to the definition of a firearm "the frame or receiver of any such weapon" in 1968.  18 U.S.C. § 921(a)(3)(B).  Congress replaced the term "part or parts" in the definition of a firearm with a single identifiable part which may be

---

[8] The statistics cited originate from an independent third party and are not verified by the government or ATF.

regulated under the GCA. *See* Cong. Rec. S. 5527 (March 22, 1965). The lethality of the part is irrelevant to whether a part should be regulated pursuant to the statute.

The position that a firearm frame or receiver must include all the components listed in section 478.11 is manifestly incompatible with the GCA and Part 478. By contrast, the classification of the AR-15 (AM-15) lower receiver as a firearm frame or receiver is consistent with the intent of the legislative history and Part 478.

ii.       **The basis for the classification of the AR-15 lower receiver as a firearm frame or receiver.**

In addition to the legislative history of the Gun Control Act of 1968 (GCA) and the implementation of the GCA under Part 478, FEO Hoffman considered past precedent of ATF classification of AR-type receivers; the parts housed by the AR-type receivers; and industry's identification of the firearm frame or receiver.

FEO Hoffman testified that ATF considers past precedent in classifications of the same type of firearm. FEO Hoffman indicated that the oldest letter classifying the AR-15 lower receiver as the firearm frame or receiver dated back to January 1972. (R. 60, Hrg. Tr., Page ID 557). This is supported by ATF's historical classification of the AR-15 lower receiver as the frame or receiver of a firearm under the GCA. Specifically, the Acting Director of the Alcohol Tobacco and Tax Division (ATTD)[9] wrote that, regarding M-16 rifles, "we have determined that the lower receiver is in fact the receiver of a machine gun as that term is used" in the NFA. Letter to Assistant Regional Commissioner Re:M-16 Receivers Forged By Kaiser Aluminum and Chemical Company, Erie, Pa., and Subsequently Machined by Firearms Manufacturers such as Colt, H&R Arms Company, and General Motors Corporation, (Feb 23, 1971), Govt's Ex.4.

---

[9] The ATTD is ATF's predecessor under the Department of Treasury.

Similarly, in replying to an inquiry in 1972, the Director informed an industry member that "this office has determined that for purposes of marking and control, the lower receiver is the receiver of the firearm."  Letter to Mr. Michael D. Kokin of Sherwood Distributors Inc. (January 19, 1972), Govt's Ex. 5.  ATF has consistently notified manufacturers that the regulated "firearm frame or receiver" of an AR-15 is the lower receiver since 1971. (R. 60, Hrg. Tr., Page ID 551, 561).  FEO Hoffman testified that the lower receiver has been identified by Colt as the frame or receiver of an AR-15 since 1964[10] and that the upper receiver of an AR-15 has never been classified as the frame or receiver of a firearm. *Id.*

FEO Hoffman explained that that the AR-15 includes roughly 50-60 total parts in both the upper assembly and lower receiver of the AR-15 type firearm. (R. 60, Hrg. Tr., Page ID 553). The AR-15 houses two of the components listed under the frame or receiver definition of section 478.11. *Id.* at 556. ATF uses the "firearm frame or receiver" definition to identify the part that best meets the definition, and look for a critical part for regulation. *Id.* at 565. As it pertains to the AR-15 receiver, FEO Hoffman testified that Colt already identified the lower receiver with

---

[10] In the 1950s, The American Rifleman publicized a new rifle manufactured by Armalite, the AR-15. NRA Technical Staff, *The Armalite AR-15 Rifle* The American Rifleman, June 1959, at 24. The United States Air Force tested the AR-15 in 1960 and recommended after testing that the AR-15 rifle be adopted as the standard shoulder weapon. "The Armalite AR-15 Rifle", Walter J. Howe and E.H. Harrison, *The Armalite AR-15 Rifle* The American Rifleman, May 1962, 21, 23. In 1962, The American Rifleman, indicated the interest in the AR-15 by the Army subject to further development of the rifle. Id. at 23. The military adopted the M16 in 1964 and a year later a civilian version of the rifle appeared in the market. The AR-15 is the civilian version of the military's M-16 rifle, and is, unless modified, a semiautomatic weapon. Joe Poyer, *The M16/AR15 Rifle*, 2, 5 (North Cape Publications, Inc., 2007). The M-16, in contrast, is a selective fire rifle that allows the operator, by rotating a selector switch, to choose semiautomatic or automatic fire. Many M-16 parts are interchangeable with those in the AR-15 and can be used to convert the AR-15 into an automatic weapon. Joe Poyer, *The M16/AR15 Rifle*, 2, 5 (North Cape Publications, Inc., 2007). The military MIL-SPEC Mil-W-13855 provided the standard for marking the lower receiver of the M16 rifle, the civilian markings reflected the manufacturing company's desires and ATF requirements. *Id.* at 7. The standard receiver markings for the AR-15/M16, as regulated by ATF, is on the left magazine well of the lower receiver. *Id.* at 8. The identification of the regulated part for AR-15 type firearms, pre-dates the Gun Control Act of 1968 and the implementing Federal regulations. *See* NRA Technical Staff,*The Armalite AR-15 Rifle* The American Rifleman, June 1959, at 24 (profiling the new Armalite AR-15).

markings prior to commercial sale in 1964. *Id.* at 568. ATF reviewed the firearm and determined that the identification of the lower receiver as a firearm frame or receiver under the GCA did not prevent the effective administration of the GCA. *Id.* at 567. Further, the lower receiver housed two of the three components listed in the firearm frame or receiver definition. *Id.*

The defendant's expert Daniel O'Kelly and FEO Hoffman identified the lower receiver of an AR-type firearm as having the required markings on the firearm. (R. 60, Hrg. Tr., Page ID 551). The defendant argues that the placing of a serial number on the lower component does not automatically make it a receiver. Def.'s Substitute Mot. to Dismiss, at 7. FEO Hoffman affirmed that placing any marking on a part doesn't necessarily make it something else. (R. 60, Hrg. Tr., Page ID 580). While a serial number alone cannot be used to determine a part is a firearm or a firearm frame or receiver; the serial number or other marking may be used to identify the part which the manufacturer identifies as the firearm frame or receiver for purposes of regulation, thus providing notice to a purchaser. The GCA, 18 U.S.C § 923(i) requires that a manufacturer or importer of a firearm identify the firearm with a serial number and markings as prescribed by the Attorney General. Section 478.92 implements these statutory requirements and requires that the manufacturer or importer identify the frame or receiver of a firearm with a serial number, model, caliber or gauge, manufacturer's or importer's name and when applicable the name of the foreign manufacturer, if a domestically made firearm, the city and state of the manufacturer's place of business, and if imported the city and state of the importer's place of business. The defendant's expert Daniel O'Kelly agrees that if a manufacturer manufactures a frame or receiver, the serial number must be placed on the item. (R. 60, Hrg. Tr., Page ID 484). FEO Hoffman stated that the AR-15 type firearm originally manufactured by Colt had been marked on the lower receiver prior to the passage of the GCA and thereafter Colt continued to mark this part as the lower receiver of the firearm. (R. 60, Hrg. Tr., Page ID 551, 565). Additionally, the identification of the AR-15

lower receiver as the firearm frame or receiver is consistent with industry's identification of this part as the firearm frame or receiver. Joe Poyer, *The M16/AR15 Rifle*, 2, 5 (North Cape Publications, Inc., 2007) ("According to provisions of the 1968 Gun Control Law, the lower receiver is the "gun" as it contains the firing mechanism in the form of the trigger assembly. It also contains the magazine assembly, the pistol grip and the buttstock assembly including the recoil spring."); B. Gil Horman, *Building AR-15 Pistols at Home* NRA: The American Rifleman, available at https://www.americanrifleman.org/articles/2016/7/14/building-ar-15-pistols-at-home/ ("The AR-15 component that is legally considered the firearm is the lower receiver (where the trigger group is housed and the serial number is located). This means the lower receiver requires an FFL transfer with all of the same paperwork and fees as a complete gun.");

The defendant's expert discussed the inconsistency ATF presented by classification of the FN FAL firearm upper assembly as the firearm frame or receiver instead of the lower receiver of the AR-15 type firearm. (R. 60, Hrg. Tr., Page ID 483). Specifically, Mr. O'Kelly stated "[a]nd the lower of an FAL, just like an AR-15, houses the hammer and the firing mechanism, whereas the upper houses the bolt and receives the barrel. The irony is, though, that ATF considers the upper of that firearm to be the receiver and the lower to be nothing, in direct opposite of what they consider with an AR-15, the lower is the firearm and the upper's nothing." (R. 60, Hrg. Tr., Page ID 483).

However, although he testified to it, Mr. O'Kelly fails to recognize a key element that distinguished these items and requires the current classifications. As the defense expert conceded, both the AR-15 *lower* receiver and the FN FAL *upper* receiver can be modified to accommodate machinegun parts that will allow it to function automatically as part of a complete weapon. (R. 60, Hrg. Tr., Page ID 528-530). While the AR-15 and the FN FAL require the upper or lower assembly, respectively, to complete the weapon, these assemblies require no

modification to be a part of a functional machinegun. All of the necessary machinegun components are held in those parts that ATF has classified a "receiver." So although the *lower* receiver of one weapon and the *upper* receiver of another weapon are classified the "receiver" of the weapon, this supposed irony is superficial. The ability to accept these machinegun parts is key because both the GCA and the National Firearms Act (NFA) regulate machinegun receivers. 26 U.S.C. § 5845(b) ("the frame or receiver of any such weapon [which shoots is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger])."

Because no modification is necessary to make it a machinegun, classifying the FN FAL lower as a receiver, merely for "consistency," would make semiautomatic "receivers" indistinguishable from automatic "receivers." In this way, there would be no FN FAL semiautomatic receivers. Similarly classifying AR-15 uppers as "receivers" to be consistent with the FN FAL classification would render all AR-15 uppers machineguns. All AR-15s would be regulated as machineguns.

The defendant also argues that "simply putting an upper and lower AR-15 receiver together would not satisfy the definition until all of the lower parts were inserted and installed." Def.'s Substitute Mot.to Dismiss, at 6. This position eliminates Congress' intent in regulating a single part of a firearm and removes the "firearm frame or receiver" from the definition of a firearm under section 921(a)(3). The result of the defendant's argument is that a single part of a firearm (i.e. the frame or receiver) is not regulated until that single part is fully assembled with every part (i.e. springs, pins, firing mechanism, hammer, etc.). As it pertains to the AR-15, a lower receiver must be fully assembled, then an upper assembly must be fully assembled, and finally the lower receiver and upper assembly must be connected to be regulated as a firearm. This position directly contradicts the Congressional intent to regulate a single part and disregards

23

the plain language of the statute. Such a position would eliminate a Federal firearm licensee's ability to stop prohibited persons from obtaining firearms because all parts could be obtained from different sources. Such a position clearly undermines the statute.

The government, through FEO Hoffman, considered the legislative history, regulatory scheme, past ATF classifications, industry identification of the firearm frame or receiver, and the parts which can be installed in the classification of the AM-15 receiver as a firearm frame or receiver under the GCA.

## C.   THE PREVIOUS DECISIONS CITED BY THE DEFENSE ARE NOT SUPPORT FOR DISMISSAL IN THIS CASE.

The Court requested that the parties address the *United States v. Roh,* Case No. 15CR-167 Tentative Minute Order re Post Trial Motions and a letter from the Office of the Attorney General to Speaker Paul Ryan regarding the *United States v. Jimenez* decision. *See United States v. Jimenez*, 191 F. Supp. 3d 1038, 1041 (N.D. Cal. 2016).

As the Court is aware, the Tentative Minute Order cited is not a final order issued by the Central District of California. Additionally, the defendant in *Roh* pled guilty to 18 U.S.C. § 922(a)(1)(A) for willfully engaging in the business of manufacturing firearms without a manufacturer's license. Specifically, the defendant "engaged in the business of manufacturing firearms without a license by making AR-15 type rifles and pistols that would expel a projectile by the action of an explosive . . . . Defendant did this through a process that included machining the lower assembly of an AR-15 type firearm and then installing the remaining parts onto that assembly." Plea Agreement for Def. Joseph Roh, *United States v. Joseph Roh*, 8:14-cr-00167-JVS, 5, May 16, 2019. The plea agreement does not discuss the classification of the AR-15 lower frame or receiver. *See id.*

The government disagrees with the Central District of California's tentative order conclusion and also asserts that the order is not legally binding because it is not final. As discussed in this response, the government maintains that the decision by the Central District of California is manifestly incompatible with the Gun Control Act of 1968 (GCA) and the implementing regulations under section 478.11. The tentative order addresses this argument as it pertains to that defendant and notice for purposes of a vagueness challenge. (Doc # 61-2, Tentative Minute Order, Page ID#: 622). Additionally, the Central District of California and the Defendant state that FEO Hoffman asserted there is no objective classification to provide notice to the defendant. (Doc # 61-2, Tentative Minute Order, Page ID#: 612); Def.'s Substitute Mot. to Dismiss, at 8. The government's response and FEO Hoffman's testimony addresses ATF's objective considerations for classification of firearms and further addresses the notice provided to the industry. ATF considers the following: the legislative history of the GCA and regulatory implementation under Part 478; ATF's historical precedent in classifying the AR-15 lower receiver as the frame or receiver; the manufacturer's and industry's intent to identify the AR-15 lower receiver as the frame or receiver; and the components of the firearm frame or receiver and whether the part is vital to the function of the firearm.

The defendant in this case does not assert the notice argument. Even if the motion to dismiss did raise this argument, the defendants had fair notice that the AM-15 receiver is a firearm frame or receiver. The test for vagueness is "whether the text of the statute and its implementing regulations, read together, give ordinary citizens fair notice with respect to what the statute and regulations forbid, and whether the statute and regulations read together adequately provide for principled enforcement by making clear what conduct of the defendant violates the statutory scheme." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999). In cases not involving first amendment interests, the court examines whether the statute is unconstitutionally

vague as applied to the facts of the case. *United States v. Hill*, 167 F.3d 1055, 1063 (6th Cir. 1999).

First, the GCA statutory and regulatory scheme indicate a legislative intent that a single part of the firearm be regulated based on inclusion of a frame or receiver in the definition of a firearm in 18 U.S.C. 921(a)(3). This is further indicated by the requirement to mark a single part under section 923(i). Additionally, the preamble to the "meaning of terms," which indicates that a term defined in section 478.11 may not be "manifestly incompatible" with the intent of that term, provides defendants with notice that a firearm frame or receiver does not need to house all the parts in the definition under 478.11. If a receiver must house all the elements listed in 478.11, the result would be a regulation which undermines Congressional intent to regulate a single part of a firearm. *See* Cong. Rec. S. 5527 (March 22, 1965).

The facts in this case further provide notice to the defendants that the AM-15 lower receiver is a firearm under the GCA. The Government has provided notice through industry classifications, press releases, and question and answers which treat the lower receiver as a firearm frame or receiver. The industry and military also recognized that the AR-15 type lower receiver is the firearm frame or receiver based on literature and that manufacturers place required markings on the AR-15 type lower receiver. The transfer of the AM-15 in this case indicate extensive regulation of the product. Finally, defendant Robison completed an ATF Form 4473 which provides notice of a firearms purchase through the labels, instructions, definitions, and certifications on the Form.

The *Roh* case is also factually distinguishable. The *Roh* case specifically dealt with whether an individual manufactured a device that is not a firearm frame or receiver into a firearm frame or receiver by taking certain steps in the manufacturing process. (Doc # 61-2, Tentative Minute Order, Page ID#: 608-609). The *Roh* case did not involve purchasing a marked receiver

with a serial number and manufacturer's markings from a Federal firearms licensee with the completion of an ATF Form 4473.

The Court asked the parties to address the 2016 letter from then Attorney General Loretta Lynch to Congress. The Office of Attorney General letter to then Speaker of the House Paul Ryan in light of *United States v. Jimenez* is a statutorily required letter under 28 U.S.C. § 530D. Specifically, section 530D states –

> **(1) In general.**--The Attorney General shall submit to the Congress a report of any instance in which the Attorney General or any officer of the Department of Justice-- . . . determines -- . . . to refrain (on the grounds that the provision is unconstitutional) from defending or asserting, in any judicial, administrative, or other proceeding, the constitutionality of any provision of any Federal statute, rule, regulation, program, policy, or other law, or not to appeal or request review of any judicial, administrative, or other determination adversely affecting the constitutionality of any such provision.

The Attorney General's letter stated "[w]hether the district court's decision is best understood as a vagueness ruling or, alternatively, as a conclusion that the relevant regulatory scheme did not cover the charged conduct, this case is not a suitable vehicle for appellate review." (Doc#: 61-1, Letter from the Office of the Attorney General, Page ID#: 600). The Attorney General sent this letter to comply with the statutory requirement to notify Congress of the decision to refrain from appealing the judicial decision in *United States v. Jimenez*, which may adversely affect the constitutionality of the section 478.11.  This is not a statement that the regulation is now invalid for purposes of enforcement by ATF.

The defendant also relies on *United States v. Jimenez* in support of their argument that the receiver must house the parts referenced in the "firearm frame or receiver definition" under 27 C.F.R. § 479.11. *United States v. Jimenez*, 191 F. Supp. 3d 1038, 1041 (N.D. Cal. 2016) ("a receiver must have the housing of three elements: hammer, bolt or breechblock, and firing mechanism.") The Defendant's reliance on the underlying reasoning in *Jimenez* for the

proposition that the Court determined that a firearm frame or receiver must house all the parts in the definition in order to be a receiver is misplaced. Specifically, the Court stated:

> The gist of Jimenez's challenge is that the AR-15 lower receiver does not fit the CFR definition of a "receiver" that is illegal under the gun laws. Significantly, the parties agree on all the factors material to this challenge. They agree that Section 479.11 of the CFR defines a receiver as the "part of a firearm which provides housing for the hammer, bolt or breechblock and firing mechanism, and which is usually threaded at its forward portion to receive the barrel." This means a receiver must have the housing for three elements: hammer, bolt or breechblock, and firing mechanism. As the plain language of Section 479.11 shows, barrel threading is not a mandatory element. See also 1,100 Machine Gun Receivers, 73 F.Supp.2d at 1292 (same). *Jimenez* at 1041.

> …the salient question is how a person—and specifically Jimenez—contemplating the purchase of an AR-15 lower receiver would have known about this interpretation or that ATF would treat buying one as a crime.

The Jimenez case presents an as applied challenge regarding fair notice to that particular defendant, but is not a legal determination on the Government's interpretation of what constitutes a firearm frame or receiver, nor a determination on the validity of a Federal regulation. Further, the defendant in Jimenez was charged with both a violation of the GCA (18 U.S.C. § 922(o)) as well as a violation of the National Firearms Act (NFA)(26 U.S.C. § 5861(d). In order to prove a violation of the NFA the government must show that the defendant was aware of the characteristics of the firearm that bring it into the purview of the NFA. See *Staples v. U.S.*, 511 U.S. 600 (1994). This is not required to prove a violation of the Gun Control Act.

The defendant's motion to dismiss does not challenge the validity of the regulatory definition for vagueness as applied to this defendant. Rather, the defendant argues that the AM-15 lower cannot be a firearm frame or receiver based on the definition of firearm frame or receiver under 27 C.F.R. 478.11. Even if the defense presented this argument in the defendant's motion to dismiss, the defendant received sufficient notice that what the defendant intended to purchase was a firearm.

**D.    IF THE COURT SHOULD DETERMINE THE AM-15 LOWER
RECEIVER IS NOT A FIREARM OR RECEIVER UNDER THE GUN
CONTROL ACT OF 1968, THE DEFENDANT MAY STILL BE
CHARGED UNDER 18 U.S.C. §922(a)(6).**

The defense argues that the factual basis does not exist for the indictment because the

AM-15 lower receiver is not an actual firearm. Def.'s Substitute Mot. to Dismiss, 4.  While the

government disagrees and contends that the AM-15 lower receiver is the frame or receiver of a

firearm, the possession or transfer of a firearm is not an element under 922(a)(6).

The elements of 922(a)(6) require that "(1) the defendant knowingly made (2) a false or

fictitious oral or written statement that was (3) material to the lawfulness of the sale or

disposition of a firearm, and was (4) intended to deceive or likely to deceive a firearms dealer."

*United States v. Morales*, 687 F.3d 697, 700 (6th Cir. 2012) (quoting *United States v. Harvey*,

653 F.3d 388, 393 (6th Cir. 2011). Section 922(a)(6) encompasses both an acquisition or

attempted acquisition. Although the defendant argues that the charge must be dismissed because

the AM-15 is not a "firearm", this classification is irrelevant to a charge under 922(a)(6).

The Supreme Court explained in *Huddleston v. United States*, 415 U.S. 814 (1974),

"[s]ection 922(a)(6)…was enacted as a means of providing adequate and truthful information

about firearms transactions."  The Court recognized Congress' concern with information

provided to these licensees. It stated that protecting the information in licensee's record "was a

prime guarantee of the Act's effectiveness in keeping 'these lethal weapons out of the hands of

criminals, drug addicts, mentally disordered persons, juveniles, and other persons whose

possession of them is too high a price in danger to us all to allow.'" *Id*. (citing remarks of Sen.

Tydings, 114 Cong. Rec. 13219 (1968)).  Indeed, the Court recognized that the crime was in

making the false statements noting that "any false statement **with respect to the eligibility of a

person to obtain a firearm** from a licensed dealer was made subject to a criminal penalty."  *Id*.

at 825 [Emphasis added]. Some Federal Circuit Courts have also determined that whether the firearm is ultimately acquired as a result of a false or fictitious statement is irrelevant in a violation under section 922(a). *United States v. Broznya*, 571 F.2d 742, 745 (2nd Cir. 1978) ("Congress deemed it to be immaterial whether the firearm was ultimately acquired"); *United States v. Appleby*, 380 F.3d 365, 366 (8th Cir. 2004); *United States v. Gardner*, 579 F.3d 474, 477 (8th Cir. 1978); *United States v. Guerrero*, 234 F.3d 259, 262 (5th Cir. 2000).

Here, even if the AM-15 is not a firearm the defendant 1) knowingly made (2) a false or fictitious statement on the ATF Form 4473 that defendant Robison was the purchaser of the AM-15; 3) material to the lawfulness of the sale or disposition of a firearm 4) 4) in an attempt to deceive the firearms dealer. A firearm transfer and acquisition is not required under 922(a)(6). The ATF Form 4473 is specifically identified as the Firearms Transaction Record. A cursory review of the ATF Form 4473 provides numerous indications that the Form and statements on the Form involve the sale or disposition of a firearm. *See* Govt's Ex. 1. The purpose as stated on the Form is to determine whether a licensee may "lawfully sell or deliver a firearm to the person identified in Section A." Govt's Ex. 1, 1. Question 11.a. on the ATF Form 4473 requires that the purchaser answer the question "Are you the actual transferee/buyer of the firearm(s) listed on this form?". Govt's Ex. 1, 1. The ATF Form 4473 requires that the purchaser of the firearm certify that the answers are true and correct, the individual's that any false oral or written statement with respect to the transaction is punishable as a felony, and that the purchaser understand the Notices, Instructions and Definitions on the ATF Form 4473. Govt's Ex. 1, 3. The Form also requires the identification of the firearm to be purchased in section D. Govt's Ex. 1, 3. Regardless of whether a firearm is acquired, defendant Robison's signature on this form demonstrates the defendant's attempt to acquire a firearm by deceiving the dealer on the Firearms Transaction Record. If the Court determines the AM-15 is not a firearm this case can

still proceed based on the defendant's disregard for the purpose, instruction, and warnings on the ATF Form 4473, the Firearms Transaction Record.

## IV.    CONCLUSION

The government has alleged sufficient facts to make a prima facie showing of a violation of 18 U.S.C. § 922(a)(6) and the Court should deny the defendant Robison's motion to dismiss.

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney

By: */s/ Matthew D. Simko*
Matthew D. Simko (0086787)
Matthew.Simko@usdoj.gov
Assistant United States Attorneys
Four Seagate, Third Floor
Toledo, Ohio 43604
Tel.: (419) 259-6376
Fax (419) 259-6360

## CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

*/s/ Matthew D. Simko*
Matthew D. Simko
Assistant United States Attorney