# IN THE UNITED STATES DISTRICT COURT FOR
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

United States of America,                                    Case No. 3:18CR387

        Plaintiff,

      v.                                                     **ORDER**

Richard Rowold, et al.

        Defendants.

On July 11, 2018, the government filed a two-count indictment against defendants Richard Rowold and Steven Robison for violations of the Gun Control Act of 1968 ("GCA"), 18 U.S.C. § 922, *et seq.*

Count 1 alleges that both defendants violated § 922(a)(6) by making a false statement in connection with the acquisition of fifty Anderson AM-15 lower receivers.[1] Count 2 alleges that Rowold violated § 922(g)(1) by possessing fifteen Anderson AM-15 lower receivers.

Defendant Robison filed a motion to dismiss Count 1. (Doc. 39). Rowold filed a motion to adopt Robison's motion to dismiss Count 1 and to apply the motion to Count II. (Doc. 40). I allowed these requests.

The government filed an opposition to the defendants' dismissal motions. (Doc. 41). Both defendants filed replies. (Docs. 43, 44). On September 26, 2019, I held an evidentiary hearing and

---

[1] The indictment refers to the alleged firearm as "Anderson AM-15 lower receivers."

The term, "AR-15" refers generically to the civilian semi-automatic version of the military M-16 automatic rifle. "AM-15" refers to the AR-15 that Anderson Manufacturing produces. I use the common parlance AR-15 in this opinion.

heard oral argument. I gave leave to the parties to file supplemental briefs, which they have done. (Docs. 64, 70, 72).

For the reasons that follow, I grant the defendants' motions to dismiss both counts of the indictment.[2]

## Background

The defendants assert that the indictment fails to allege facts constituting an offense that, if proved, would establish *prima facie* commission of a crime. (Doc. 39). More specifically, the defendants claim that the AR-15 lower receiver is not a "firearm" as required by and defined in § 921(a) of the GCA. *Id.*[3]

At the evidentiary hearing defense witness Daniel O'Kelly and government witness Daniel Hoffman, an employee with the ATF Firearms and Technology Division,[4] testified about the components of an AR-15. The testimony established a set of pertinent undisputed facts about the weapon and its universally common structural components.

The AR-15 firearm platform is a two-part system comprised of an "upper receiver" and a "lower receiver." (Doc. 60 Pg ID 466). Neither the upper nor the lower receiver can, standing alone, cause the weapon to fire. *Id.* at 581. The upper receiver houses the bolt and enables insertion of the barrel. The lower receiver provides housing for the hammer and the firing mechanism. *Id.* at 466. The AM-15 lower receiver at issue here is a container that would, in a fully assembled

---

[2] The defendants did not challenge the indictment on sufficiency of notice grounds. The government's opposition, however, addressed the issue. I decline to address it, as the challenges the defendants made suffice to grant their motions.

[3] The "receiver," in lay terms, is the part of a firearm that provides housing for the components that enable a gun to shoot bullets.

[4] According to Mr. Hoffman, the Division in its day-to-day operations, provides the technical guidance and classification on how items fall within the GCA. In other words, the Division interprets and applies the GCA and ATF regulations to determine their applicability in particular circumstances.

weapon, house only the hammer and the firing mechanism. *Id.* at 472. The specific items in this case were, when purchased, simply empty containers, shown by defendants' Exh. A.



### Standard for Dismissal

To be legally sufficient, an "indictment must assert facts which in law constitute an offense; and which, if proved, would establish *prima facie* the defendant's commission of that crime." *United States v. Maney*, 226 F.3d 660, 663 (6th Cir. 2000) (citing *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 177 (6th Cir. 1992).

Pursuant to Fed. R. Crim. P. 12(b), the defendant may file a pretrial motion to dismiss an indictment on the basis that it fails to state an offense, *i.e.*, that "the indictment does not charge a crime against the United States." *United States v. Cotton*, 535 U.S. 625, 631 (2002) (quoting *Lamar v. United States*, 240 U.S. 60, 65 (1916).

When a defendant argues that "as a matter of law the undisputed facts do not constitute the offense charged in the indictment, the Court is reviewing a question of law, not fact." *United States v. McMichael,* 350 F.Supp.3d 647, 650 (W.D. Mich. 2018) (quoting *United States v. Vertz*, 40 F. App'x 69. 70 (6th Cir. 2002)). Thus, for a motion to dismiss to qualify for consideration, the relevant facts must be undisputed, and the dispositive issue must involve a question of law. *E.g. United States v. Hofstetter,* 2018 WL 1704241, *6 (E.D. Tennessee 2018).

The pending motions satisfy these requirements. There is no factual dispute about what part of an AM-15 (and all AR-15s) is the lower receiver or about its components. The only dispute is whether, as a matter of law, the lower receiver is a "firearm" under the GCA.

## Discussion

### A. Applicable Legal Principles

The Sixth Circuit directs that "[t]he language of the statute is the starting point for interpretation…" *United States v. Jackson*, 635 F.3d 205, 209 (6th Cir. 2011) (quoting *United States v. Choice,* 201 F.3d 837, 840 (6th Cir. 2000)).

Under § 922(a)(6), it is unlawful:

> For any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement…., intended or likely to deceiver such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter.

To sustain a conviction under § 922(a)(6), the government must prove that "(1) the defendant knowingly made (2) a false or fictitious oral or written statement that was (3) material to the lawfulness of the sale or disposition of a firearm, and was (4) intended to deceive or likely to deceive a firearms dealer." *United States v. Harvey*, 653 F.3d 388, 393 (6th Cir. 2011).[5]

The GCA defines a "firearm" as "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B)

---

[5] The government has indicated that even if I determine that the lower receiver at issue is not a firearm, the defendants may still be charged under 18 U.S.C. § 922(a)(6) because "this classification is irrelevant to a charge under § 922(a)(6)." (Doc. 72 Pg. ID 724). One of the bedrock principles of due process is that it is the government's burden to prove beyond a reasonable doubt every element of the crime charged. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073. One of the elements requiring proof beyond a reasonable doubt under § 922(a)(6) is that the false statement is "material to the lawfulness of sale or disposition *of a firearm.*" *Harvey* at 393. It is axiomatic that if the government cannot prove that the AM-15 lower receiver is a firearm then the government has not met its burden.

4

the frame or *receiver* of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device." § 921(a)(3) (emphasis supplied).

The statute does not itself define "frame or receiver."

That being so, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) has adopted a gap-filling regulation that defines the term "frame or receiver" as "[t]hat part of a firearm which provides housing for the hammer, bolt or breechblock, *and* firing mechanism, and which is usually threaded at its forward portion to receive the barrel." 27 C.F.R. § 478.11 (emphasis supplied).

As with all exercises in statutory interpretation, "we look first to the plain and unambiguous meaning of the regulation." *In re Arctic Exp. Inc.,* 636 F.3d 781, 791 (6th Cir. 2011).

Read plainly, the definition in § 478.11 is not difficult to understand. Using a serial comma, it unambiguously states what is needed for a receiver to be a firearm, and thus within the scope of, and thus covered by, the GCA: namely, all three parts – one of which must be either the bolt or breechblock.

Case law requires dismissing an indictment where the undisputed facts of the case simply do not fall within the statute and implementing regulations.

For example, in *United States v. Moss,* 872 F.3d 304 (5th Cir. 2017), the court considered the definition of "You." Following a fatal welding accident on an offshore oil platform, the government indicted the platform's owner and several oil platform contractors for violating the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. §§ 1331, *et seq.,* the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.,* and involuntary manslaughter, 18 U.S.C. § 1112. *Id.* at 305.

As does the indictment here, the indictment in *Moss* asserted that the defendants had violated the statute's enabling regulations. The specific allegation was that the defendants had

failed to perform pre-work inspections on the days before the welding accident. *Id.* at 307. The contractors moved to dismiss. *Id.*

As I am doing here, the court in *Moss* analyzed the regulatory provisions on which the government based the indictment. There the district court concluded that none of the OSCLA regulations applied to oilfield contractors. *Id.* Instead, the court determined, the regulations' term, "You," applied only to the owner, and not to the contractors. *Id.*

The applicable OSCLA regulation stated: "You" means "a lessee, the owner, or the holder of operating rights, a designated operator or agent of the lessee(s), a pipeline right-of-way holder, or a State lessee granted a right-of-use and easement." 30 C.F.R. § 250.105.

Missing from the definition are contractors, subcontractors, and service providers. *Id.* at 308. Noting that only the owner-defendant "is the owner, lessee, or holder of operating rights," the district court granted the contractors' motion to dismiss. *Id.*

In a case closer to this, though not under the GCA, *United States v. McMichael*, 350 F.Supp.3d 647 (W.D. Michigan 2018), the court dismissed an indictment charging unlawful possession of firearms and ammunition by one who had been committed to a mental institution.

The government charged the defendant after reviewing one of the defendant's old renewal applications to renew a firearms license. *Id.* at 651. His application stated, "No," in response to "have you ever been *committed* to a mental institution?" *Id.* (emphasis supplied).

The issue in *Michael* was whether the defendant had been "committed" to a mental institution.

In May 2014, after the defendant's wife had filed a petition and application for hospitalization with a probate court, the defendant completed a "Request to Defer Hearing on

Commitment" form, whereby he agreed to a combined hospitalization and alternative treatment program. *Id.* at 651. The probate court deferred the commitment hearing. *Id.*

The government based its charge in *Michael* on 18 U.S.C. 922(g)(4), which provided:

> It shall be unlawful for any person…(4) who has been adjudicated as a mental defective or has been committed to any mental institution, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

In his motion to dismiss, the defendant argued that his May 2014 hospitalization was not a "commitment to a mental institution." 350 F. Supp.3d at 653.

Section 922(g)(4) does not define "committed." As in this case, an implementing regulation fills the gap, defining "committed to a mental institution" as:

> A formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority. The term includes a commitment to a mental institution involuntarily. The term includes commitment for mental defectiveness or mental illness. It also includes commitments for other reasons, such as for drug use. The term does not include a person in a mental institution for observation or a voluntary admission to a mental institution.

27 C.F.R. § 478.11.

The court in *Michael* found that "[t]he regulation makes clear,…, that a voluntary hospitalization or a hospitalization for observation does not amount to being 'committed to a mental institution' and, furthermore, that an affirmative commitment decision by some authoritative body is also required." 350 F. Supp.3d at 656. That being so, the court found that "a temporary, *ex parte* hospitalization with no adjudication had not caused the defendant to be 'committed to a mental institution.'" *Id.* at 661.

7

Dismissing the case, the court concluded that "as a matter of law" the defendant "was not prohibited from possessing firearms or ammunition because he has never been committed to a mental institution." *Id.* at 662.

Before deciding whether these decisions support the conclusion that the AM-15 lower receiver is not, as a matter of law, a firearm, I address the government's arguments that the lower receiver is a "firearm" under the GCA and its implementing regulations.

### B. Government's Arguments

The government contends that I must give controlling deference to the ATF's regulation as the agency interprets and applies it. It also argues that granting the defendants' motions would remove all leal restrictions on possession of AR-15 lower receivers.

### 1. Deference to Agency Interpretation of Regulations

As the government notes, the Supreme Court has held that:

> If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.

*Chevron, U.S.A., Inc. v. NRDC, Inc.,* 467 U.S. 837, 843-844 (1984).

Though this accurately states the law, it does not control the issue here.[6]

In the absence of a statutory definition, the ATF crafted § 478.11 to elucidate what a receiver is. Moreover, as established at the evidentiary hearing, the ATF classifies the AR-15 lower receiver as the regulated component in weapons such as the AR-15. By way of explanation for the agency's choice of the lower unit of the split receiver, ATF Firearms and Technical Division

---

[6] The government also suggests that the ATF's interpretation of § 478.11 is entitled to "some deference" under *Skidmore v. Swift & Co.,* 323 U.S. 134 (1944). Deference under *Skidmore*, however, governs the deference courts owe to any agency's interpretation of *an unambiguous statutory provision* announced in a manner less formal than the notice-and-comment rulemaking procedures. Here, the agency is interpreting its own regulation.

employee, Daniel Hoffman, testified that the agency believes that it "best meets" the definition of "firearm frame or receiver" in § 478.11. (Doc. 60 Pg ID 565).

When an agency interprets its own regulation, as Mr. Hoffman's unit does, courts "ordinarily defer to [the] agency's interpretation of its own regulations," *Duncan v. Muzyn,* 833 F.3d 567, 581 (6th Cir. 2018). This additional degree of judicial deference to an agency's exercise of its regulatory obligations, known as *Auer* deference, derives from the Supreme Court's decision in *Auer v. Robbins,* 519 U.S. 452 (1997). According to that decision, "when an agency interprets its own regulation, the Court, as a general rule, defers to it *unless that interpretation is plainly erroneous or inconsistent with the regulation.*" *Decker v. Northwest Environmental Defense Center,* 568 U.S. 597, 613 (2013) (emphasis supplied).

Moreover, as the Supreme Court recently explained:

> First and foremost, a court should not afford *Auer* deference *unless the regulation is genuinely ambiguous*. If uncertainty does not exist, there is no plausible reason for deference. The regulation then just means what it means—and the court must give it effect, as the court would any law. Otherwise said, the core theory of *Auer* deference is that sometimes the law runs out, and policy-laden choice is what is left over. But if the law gives an answer—if there is only one reasonable construction of a regulation—then a court has no business deferring to any other reading, no matter how much the agency insists it would make more sense.

*Kisor v. Wilkie*, --- U.S. ---, ---, 139 S.Ct. 2400, 2415 (2019) (internal citations omitted) (emphasis supplied).

Deference to agency interpretation in a situation where the regulation is unambiguous would "permit the agency, under the guise of interpreting a regulation, to create *de facto* a new regulation." *Id.* (quoting *Christensen v. Harris County*, 529 U.S. 576, 588 (2000)). The same can be said where an interpretation is "plainly…inconsistent with the regulation." *Decker*, *supra*, 568 U.S. 613.

The language of the regulatory definition in § 478.11 lends itself to only one interpretation: namely, that under the GCA, the receiver of a firearm must be a single unit that holds three, not two, components: 1) the hammer, 2) the bolt or breechblock, and 3) the firing mechanism. *See, e.g., Crooks v. Harrelson*, 282 U.S. 55, 58 (1930) (holding the word "and" in its "ordinary sense" is a conjunctive word, requiring not one or the other, but both [or, in this instance, three]). Moreover, the agency's interpretation for enforcement purposes of the lower receiver as the "receiver" distorts rather than fits the tripartite regulation.

The unambiguous regulation says what it means, means what it says, and needs no inconsistent gloss to be meaningful.

The government argues that the GCA's statutory and regulatory scheme shows intent to regulate a single part of a firearm and that "to require that a receiver house all parts listed in this section would result in an application of the 'firearm frame or receiver' definition which is inconsistent with the GCA." (Doc. 41 Pg ID 166).

The Supreme Court has already provided the answer to this argument: "if a violation of a regulation subjects private parties to criminal or civil sanctions, a regulation *cannot be construed to mean what an agency intended but did not adequately express*." *Christopher v. Smithkline Beecham Corporation dba GlaxoSmithKline,* 567 U.S. 142, 156 n.15 (2012), citing *Diamond Roofing Co., v. Occupational Safety and Health Review Comm'n,* 528 F.2d 645, 649 (5th Cir. 1976) (emphasis supplied).

Even if the regulatory definition was genuinely ambiguous, I cannot give deference to an interpretation that is plainly erroneous or inconsistent with the regulation. It is apparent that the ATF's interpretation of § 478.11, that a receiver does not need to contain all of the parts listed in

the ATF's regulatory definition of "firearm frame or receiver," is inconsistent with the language of the regulation.

The government also argues that I must overrule the motions to dismiss in light of the fact that the ATF has consistently applied its regulations to bring the AR-15 lower receiver within the GCA. But there is no limitations period in this situation: misapplying the law for a long time provides no immunity from scrutiny.

Nor has the government shown that either *Chevron* or *Auer* deference requires a contrary result: its demand for deference ignores the directive that "if uncertainty does not exist, there is no plausible reason for deference." *Kisor, supra,*  --- U.S. at ----, 139 S.Ct. at 2415. (2019). No authority entitles an agency's long-standing consistent misapplication of its unambiguous regulations to deference.

## 2. Dismissal Leaves Lower Receiver Unregulated

The government points out, and defendants do not dispute, that dismissal on the basis the defendants urge would leave the AR-15 lower receiver unregulated under the GCA. This cannot factor into the decision to dismiss.

In any event, the ATF retains the authority – and has the duty – to fix the regulatory scheme and to regulate AR-15 lower receivers as firearms within the GCA. The result I reach only prevents the agency from using an unreasonable and legally unacceptable application of its current regulation to accomplish that worthwhile objective.

This decision should not come as a total surprise to the agency. The Internal Revenue Service, the precursor firearms regulatory agency before the ATF acquired that responsibility, had been aware of the problem that two-part receivers pose for regulators for nearly as long as the GCA has been in effect:

> Apparently the M-16 receiver is fabricated in two parts, and the Enforcement Division has determined that the lower portion should be considered the receiver…We were assured at the time that the lower portion comes closer to meeting the definition of frame or receiver in [the implementing regulations] although both parts were necessary to function as a 'frame or receiver.'… I can see some difficulty in trying to make cases against persons possessing only the lower part of a receiver, but insofar as the licensing, serial numbering, and special occupational tax requirements are concerned, I feel that this is the only practical solution."

CC:ATF-12,736, Internal Revenue Service Memorandum 21708, Dept. of Treasury, Subject: M-16 Receivers (March 1, 1971).[7]

### Conclusion

The AM-15 lower receiver does not fit within the definition of "frame or receiver" under 27 C.F.R. § 478.11. The indictment's factual allegations fail to state violations of 18 U.S.C. § 922, *et seq.* Thus, the government cannot prove that the defendants knowingly made false statements that were material to the lawfulness of the sale or disposition of a firearm, or that defendant Rowold possessed firearms.

Accordingly, it is hereby

ORDERED THAT the defendants' motions to dismiss (Docs. 39, 40) be, and the same hereby are granted.

/s/ James G. Carr
Sr. U.S. District Judge

---

[7] Defense witness Daniel O'Kelly, a former ATF agent of twenty-three years, specializing in firearms knowledge, testified that he called the flaws in § 478.11 to the attention of ATF officials, but to no avail. ("I co-wrote the lesson plans that are still taught there today, myself and about five other people co-wrote those in 1998, and at that time I voiced my concerns to a man named Richard Turner…") (Doc. 60 Pg ID 495).